JOSEPHINE TODD, Respondent, *v.* ALBERT WEBER et al., Executors, etc., Appellants.

Where the putative father of a bastard recognizes and adopts the child as his own, and at his request it is cared for by others, he is liable for the expenditures so incurred, and remains so until he renounces the child or otherwise notifies the persons so caring for it that he will no longer be liable.

The natural obligation arising out of his relation to the child is also a sufficient consideration for a contract on his part to pay for its support and maintenance.

Plaintiff, an illegitimate child, of whom W., defendant's testator, was the putative father, which relationship he acknowledged, was supported, cared for and educated by relatives of her mother from the time of her birth until the death of W., at his request and on the strength of repeated representations and promises on his part that they would be paid, that in case she survived him, he would provide for her by his will sufficient to pay for such maintenance and care. Plaintiff after she became of age, having been informed of these promises, and in reliance upon them, promised to pay the expenditures so incurred for her benefit. No such provision was made in the will. *Held*, that the facts established an agreement binding in law upon W., and enforceable against his estate ; that the action, therefore, was maintainable, and was properly brought in plaintiff's name.

*Duncan* v. *Pope* (47 Ga. 445), *Nine* v. *Starr* (8 Oreg. 49), *Moncrief* v. *Ely* (19 Wend. 405), distinguished.

A party for whose benefit a promise was made may maintain an action

thereon, although the consideration was one between the promisor and a third person.

(Argued February 1, 1884 ; decided February 26, 1884.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, made March 22, 1883, which reversed a judgment in favor of defendants, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Robert S. Green* for appellants. Mrs. Story had no standing to enforce the alleged promise. This is not a case of mutual promises, where one has performed and calls on the other for performance. (*Watkins* v. *Perkins*, 1 Ld. Raym. 224; *Birdsall* v. *Egerton*, 25 Wend. 619.) The plaintiff cannot recover as the beneficiary of a promise made to a third person. (*Alderson* v. *Maddison*, L. R., 5 Ex. Div. 293; *Guernsey* v. *Rogers*, 47 N. Y. 240; *Vrooman* v. *Turner*, 69 id. 284, 285; *John* v. *Morgan*, 68 id. 497; *Munson* v. *Dyett*, 56 How. 333; *Goelet* v. *Farley*, 57 id. 175; *Blunt* v. *Boyd*, 3 Barb. 212; *Rogers* v. *Union Stone Co.*, 130 Mass. 581; *Mellen* v. *Whipple*, 1 Gray, 317; *Exch. B'k* v. *Rice*, 107 Mass. 37; *Tweddle* v. *Atkinson*, 1 B. & S. 393; *Carr* v. *Nat. Sec. B'k* 107 Mass. 45.) There being no precedent legal obligation to pay, the moral obligation will not render the promise obligatory. (*Moncrief* v. *Ely*, 19 Wend. 405; *Shelton* v. *Springett*, 11 C. B. 452; *Mortimore* v. *Wright*, 6 M. & W. 482; *Raymond* v. *Loyd*, 10 Barb. 489; *Freeman* v. *Robinson*, 9 Vroom, 383.) A mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not sufficient to support an express promise. (*Geer* v. *Archer*, 2 Barb. 420; *Smith* v. *Ware*, 13 Johns. 258; *Ehle* v. *Judson*, 24 Wend. 97; *Freeman* v. *Johnson*, 9 Vroom, 383; *Farnsworth* v. *Clark*, 44 Barb. 601; *Wennell* v. *Adney*, 3 B. & P. 247; *Eastwood* v. *Kenyon*, 11 A. & E. 438; *Beaumont* v. *Reeve*, 82 B. 486; *Mills* v. *Wyman*, 3 Pick. 207; *Dodge* v.

*Adams*, 19 id. 429; *Wheaton* v. *Wilmarth*, 13 Metc. 422; *Cook* v. *Bradley*, 7 Ct. 57.) As to maintenance and support furnished subsequent to the promise, they having been furnished by her relatives, the law does not infer that the parties contemplated compensation. (*Van Kuren* v. *Saxton*, 5 T. & C. 567; *Robinson* v. *Cushman*, 2 Denio, 152; *Williams* v. *Hutchinson*, 3 N. Y. 312; *Sharp* v. *Cropsey*, 11 Barb. 224; *Wilcox* v. *Wilcox*, 48 id. 327; *Duffey* v. *Duffey*, 44 Penn. St. 399.) No promise to pay will be inferred even against the plaintiff; none can be inferred against Weber. (*Livingston* v. *Rogers*, C. & C. 331; *Conway* v. *Macfarlane*, Penn. Sp. Ct. 25; A. L. J. 23.) If the plaintiff is entitled to recover on any grounds, the evidence by her relatives, parties to conversations with Weber was inadmissible under sections 828–829, of the Code of Civil Procedure. (*Church* v. *Howard*, 79 N. Y. 415; *Miller* v. *Montgomery*, 78 id. 282; *Foote* v. *Beecher*, id. 155; *Hill* v. *Hotchkiss*, 23 Hun, 414; *Wilkins* v. *Baker*, 24 id. 32.) The promises were of a gratuity, which were revocable at pleasure. (*Duncan* v. *Pope*, 47 Ga., 445; *Nine* v. *Starr*, 8 Oreg. 49.) There was no mutuality. (*Trustees Hamilton College* v. *Stewart*, 1 Comst. 581; *Anthony* v. *Harrison*, 14 Hun, 198; *Stoddard* v. *Cleveland*, 4 How. Pr. 148; *Coleyear* v. *Mulgrave*, 2 Kern. 82; *Pearson* v. *Pearson*, 7 Johns. 26; *Fink* v. *Cox*, 18 id. 145; *Harris* v. *Clark*, 3 Comst. 93; *Eckert* v. *Eckert*, Paige, 354; *Cottage St. Church* v. *Kendall*, 121 Mass. 528; *Curry* v. *Rogers*, 1 Foster, 247.) The promise is not enforceable, because of its uncertainty. (2 Pars. on Cont. [6th ed.] 561; *Buckmaster* v. *Consumer's Ice Co.*, 5 Daly, 316; *Adams* v. *Adams*, 26 Ala. 278.)

*Wm. H. Arnoux* for respondent. The promises made by defendant's testator to the mother and grandmother of plaintiff, that he would remunerate them for her support and maintenance, by providing for plaintiff in his will, were not barred by the statute of limitations. (Wood's Master and Servant, § 83.) Where continuous services are rendered under an entire contract, and no time for payment is fixed, the statute does

not begin to run until the termination of the relation between the parties. (*Schack* v. *Garrett*, 69 Penn. St. 144; *Hale* v. *Wood*, 9 Gray, 60; *Patterson* v. *Patterson*, 13 Johns. 379; *Quackenbush* v. *Quackenbush*, 5 Barb. 469; *Ryer* v. *Stockwell*, 14 Cal. 134; *Lincoln* v. *Purcell*, 2 Head [Tenn.], 143; *Morgan* v. *Brown*, 12 La. Ann. 157; Wood's Master and Servant, § 125.) The right of action accrued only on the death of defendant's testator and the probate of his will. (Wood on Limitation of Actions, chap. 10, p. 254; *Morrison* v. *Mullen*, 34 Penn. St. 12; *Pittsburg, etc., R. R.* v. *Ryers*, 32 id. 22; *Fenton* v. *Embler*, 1 W. Bl. 353; *Savage* v. *Alden*, 2 Stark. 232; Bacon's Abridgment, Limitation, 230 D. 3; *Thompson* v. *Gordon*, 3 Strobh. [S. C.], 196; *Mackey* v. *Hawkins*, 4 C. B. 664; *Sanders* v. *Coward*, 15 M. & W. 56; *Nimmo* v. *Walker*, 14 La. Ann. 581; *Bash* v. *Bash*, 9 Penn. St. 260; *Price* v. *Price*, Cheves [S. C.], Eq. 167; *Jilson* v. *Gilbert*, 26 Wis. 637; *Titman* v. *Titman*, 64 Penn. St. 486; *Riddle* v. *Backus*, 38 Iowa, 81.) Whenever an offer is made and outstanding which is acted upon by a competent party, such performance by the promisee makes a binding contract and renders the promise obligatory. (*Pierson* v. *March*, 82 N. Y. 503; *Jones* v. *Phœnix B'k*, 8 id. 228; *Williams* v. *Cowardine*, 4 B. & A. 621; Assizes, 5 C. & P. 566; *Ryer* v. *Stockwell*, 14 Cal. 134; *Loring* v. *City of Boston*, 7 Metc. 411; *Freeman* v. *City of Boston*, 4 id. 56; *Lymmer* v. *Frazier*, 6 Mass. 344; *Wentworth* v. *Day*, 3 Metc. 352; *Gilmore* v. *Lewis*, 12 Ohio, 281; *England* v. *Davidson*, 11 A. & E. 856; *Lancaster* v. *Walsh*, 4 M. & W. 16; *Thatcher* v. *England*, 3 C. & B. 254; *Smith* v. *Moore*, 1 id. 438; *Neville* v. *Kelly*, 12 id. [N. S.], 740; *Turner* v. *Walker*, L. R., 1 Q. B. 641; L. R., 2 Q. B. 301; *Furman* v. *Parker*, 1 N. J. 310; *Cramshaw* v. *Roxbury*, 7 Gray, 374; *Denton* v. *Great N. R'y*, 5 El. & Bl. 860; *Fallich* v. *Barber*, 1 M. & S. 108; 11 Mass. 31; 14 id. 172; *Hurlyn* v. *Albany*, 1 Cro. Eliz. 67; *Train* v. *Gold*, 5 Pick. 380; *Hempler* v. *Schneider*, 17 Mo. 258; *Barnum* v. *Barnum*, 8 Conn. 469; 21 Am. Dec. 689; *Marsh* v. *Pigot*, 3 Burr. 2802; *Lindell* v. *Rokes*, 60 Mo. 249; 21 Am. Rep. 395; *Eagan* v. *Thompson*,

57 How. Pr. 324; *Parks* v. *Francis,* 50 Vt. 626; 28 Am. Rep. 517; *Wolford* v. *Powers,* 85 Ind. 294; 44 Am. Rep. 16; *Long* v. *Battle Creek,* 39 Mich. 323; 33 Am. Rep. 384; *Stevens* v. *Corbett,* 33 Mich. 461, *Shadwell* v. *Shadwell,* 30 L. J. 145; *Gunion* v. *Cromartie,* 11 Ired. 174; *Alderson* v. *Madderson,* Exch. Div., 29 Week. R. 105; *Hammersly* v. *De Beil,* 12 C. & F. 457; *Luders* v *Ansbey,* 4 Ves. 501; *Proale* v. *Soady,* 8 Week. R. 131; 2 Giff. 1; *Loffus* v. *Maw,* 10 Week. R. 513; 3 Giff. 592; *Coles* v. *Pilkington,* 23 Week. R. 41; L. R., 19 Eq. 174; Addison on Cont., § 11; *L'Amoreux* v. *Gould,* 7 N. Y. 349; *Sanders* v. *Gillespie,* 59 id. 251; *Bohm* v. *Goldstein,* 53 id. 634; *White* v. *Baxter,* 71 id. 254; *Marie* v. *Garrison,* 83 id. 14; *Willetts* v. *Sun Mut. Ins. Co.,* 45 id. 45; *Thompson* v. *Case,* 9 U. S. Ct. of Claims, 187.) When a promise is made by the putative father of a natural child to pay to the mother a sum of money for the support of such child the court will enforce such promise as a binding contract, upon proof that the child had been so supported. (*Hook* v. *Pratt,* 78 N. Y. 371; *Knowlton* v. *Bluett,* 9 L. R. Exch. 1307; *Birn* v. *Winthrop,* 1 Johns. Ch. 337; *Hicks* v. *Gregory,* 6 C. B. [N. S.] 223; *Nichole* v. *Allen,* 3 C. & P. 36; *Jennings* v. *Brown,* 9 M. & W. 496; *Kuyl* v. *Moore,* 2 S. & S. 260; *Hall* v. *Palmer,* 8 Jur. 459.) Where a valid promise is made to one for the benefit of another the latter may maintain an action thereon in his own name. (*Brewer* v. *Maurer,* 38 Ohio St. 543; 43 Am. Rep. 436; *Lawrence* v. *Fox,* 20 N. Y. 268; *Vrooman* v. *Turner,* 69 id. 280; 25 Am. Rep. 195; *Wolford* v. *Powers,* 85 Ind. 294; 44 Am. Rep. 16; *Hook* v. *Pratt,* 85 N. Y. 377; *Coster* v. *Mayor,* 43 id. 399; *French* v. *Donaldson,* 57 id. 496; *Little* v. *Banks,* 85 id. 258; *Claflin* v. *Ostrom,* 54 id. 581; *Barlow* v. *Myers,* 64 id. 41; *Clinton* v. *Hope Ins. Co.,* 45 id. 454; *Glen* v. *H. M. Ins. Co.,* 56 id. 379; *Carr* v. *Bartlett,* 72 Me.; 24 Alb. L. J. 450; *Coverdale* v. *Eastwood,* 20 W. R. 216; L. R., 15 Eq. 21; *Vroomans* v. *Turner,* 69 N. Y. 284; *Dodge* v. *Pond,* 23 id. 69; *Wallace* v. *Rapelye,* 26 Alb. L. J. 316; *In re Plaskett's Estates,* 9 W. R. 628; 30 L. J. Ch. 606.) Although Mrs. Story voluntarily assumed the

obligation to support the plaintiff, she was bound under that contract to perform it faithfully. (*Cowley* v. *People*, 83 N. Y. 464.) A promise to pay a debt on the termination of a life may be performed within a year, and, therefore, need not be in writing. (*Kent* v. *Kent*, 62 N. Y. 560.)

Danforth, J. The complaint is two-fold : *First :* That the defendant's testator, the father of the plaintiff, although not the husband of her mother, being applied to by Margaret Voris, Francis A. Knapp, Hester A. Knapp and Louisa A Story to provide for the plaintiff, promised them that he would pay for her maintenance, support and education, by making due and sufficient provision for her by his last will, in consideration that they would support her during the term of his natural life ; avers that these persons were relatives of the plaintiff's mother, and that upon this promise they maintained, cared for, educated and supported the plaintiff up to June 25, 1879, when the testator died.

*Second :* A promise by the testator to the plaintiff, and other persons acting in her behalf, that he would support and maintain her so long as she should live.

The testator made no provision for the plaintiff by will, or otherwise.

These promises were denied by the defendants, and the referee, to whom the issues were referred, found against the plaintiff, because in his opinion no legal claim had been established, lamenting at the same time "that the simplicity and ingenuousness of the plaintiff and her witnesses " — the persons above referred to — "had been practiced upon." On appeal to the General Term that court held that the plaintiff might recover upon the first cause of action, but as to the second, that no case was made out ; reversed the judgment which had followed the report of the referee and ordered a new trial. From that order the defendants appealed to this court, assenting that if the order should be affirmed, judgment absolute should be rendered against them. (Code, § 191.)

We think the referee and General Term came to a correct conclusion in regard to the plaintiff's right under the second

division of her complaint, and shall confine our discussion to the case made under its first branch. The plaintiff was born June 27, 1852, her mother having been seduced by the testator under promise of marriage. The mother was hardly more than a child herself, and had no means of her own. She was living with, and wholly dependent upon, her own mother, who was then a widow. At its birth, the testator received the child into his arms, and in the presence of witnesses acknowledged his paternity. She remained at her grandmother's nine or ten years, and during that period was visited often by the testator, who at all times manifested great affection for her, and frequently told both the mother and grandmother "that he wished" them "to take good care of the child and bring her up right, and he would see that it was all right." As these assurances were given after as well as before he had married another woman, it is difficult to believe that they related to any other than pecuniary satisfaction for the services he invoked. The grandmother at all events provided the child with board, care and clothing, paid all necessary expenses and sent her to school, paying the bills.

In 1863 or 1864, when asked by the plaintiff's mother, "do you remember about your promise to do for this child?" he said, "yes, and I will do well ·by her; if she outlives me I will remember her in my will." Again in 1870, he inquired of her mother how she (his daughter) was; how she was getting along with her music; if she was going to school; what music teacher she had; and being informed, he told her mother "to give her all the lessons she would take;" the mother replied "that would cost something," and he said, "you go on and have her take them; never mind about that I will see that you are well paid." In 1876 his attention was again called to his promise to provide for the plaintiff, and asked "if he had forgotten it," he said, "I have not, I shall remember her in my will if she outlives me."

She lived about two years, just after 1870, with her mother, and then with Mrs. Story and other relatives until 1879. During this time Mrs. Story boarded her and paid for her music

lessons, and clothes, and other expenses. To Mrs. Knapp, her aunt, who during a long period cared for the plaintiff, testator said in substance, as he had before said to her mother and her grandmother, among other things, " I want you to give her a good musical education," and she speaking of the cost, he said, " Don't worry about that, you will get it all back." Being asked in what way, he said, " I intend to do well by her in my will, them that do well by her will be well paid." He wanted to know who was taking care of her and Mrs. Knapp replied, " We are all doing for her." This occurred in 1860. Afterwards in 1875 or 1876, manifesting the same interest in his child and the same intentions in regard to her, he inquired of Mrs. Knapp, in the presence of Mrs. Story, concerning her and her progress in music, expressed satisfaction at her success, and his wish that she should receive a good education in that science. As to the expense he repeated, " You will get that all back. I have enough of this world's goods. I am only living for a name." When they asked " if he could not do something for her now," he said, " not now, but as I said before, I will do well by her ; I will remember her in my will," and with other conversation added in conclusion, " Well, take good care of her, * * * you will all be well paid."

The plaintiff was informed by her relatives of these promises of the testator, and with that knowledge, and in reliance upon them, assured the different persons who were taking care of and providing for her, and among other times, after she was twenty-one years of age, that whatever they did for her, she would when able repay. It is needless to recall more of the testimony. It is in no respect contradicted, and has been accepted as credible by the learned referee and General Term. The plaintiff from her birth to the commencement of this action has been cared for, maintained and educated by those relatives, each at different periods and at large expense. Its amount has been found and stated by the learned referee. He says : " From the time of the birth of the plaintiff to the time she went to live with her cousin (Mrs. Story)

the plaintiff's grandmother and aunt ·have paid, laid out, and expended for her in various necessary ways, and for her education and maintenance, services and moneys, amounting in all to $17,069.43, and the plaintiff's cousin, with whom she has lived from 1874 to the commencement of the suit, has also paid out considerable sums of money for her support and maintenance, amounting in all to $3,799."

Notwithstanding all this, the learned referee felt constrained to dismiss the complaint. He thought the testator had practiced dissimulation, but so successfully that he was bound only by his own conscience, and that no action lay against him though he did not perform his promises. We cannot agree to this. In our opinion there is in the record, as above quoted, evidence of an agreement made upon valuable consideration, and, therefore, also binding in law upon him and consequently upon his estate. It is true that by the common law the child that is born before marriage is so far *nullius filius* that he cannot inherit; but he may acquire rights. Nor is his putative father under any legal liability at common law to support him (*Moncrief* v. *Ely*, 19 Wend. 405), yet it is said he may take him out of the parish (*Sherman's Case*, 1 Ventris, 210) and maintain him, or by will leave any of his property to him, or in his life-time make other provision for his support. So if he acknowledges or adopts the child as his own, and at his request it is cared for by others, he becomes liable in favor of the party providing for it (*Moncrief* v. *Ely*, *supra ; Birdsall* v. *Edgerton*, 25 Wend. 619), and remains so until he renounces the child or otherwise notifies the persons who have it, that he will no longer be bound to them. From these or like circumstances a promise to make compensation may be implied, and of course such a promise may also be expressed by him. In either case the natural obligation arising out of the relation of the putative father to his child will uphold a contract upon which an action may be sustained (*Hesketh* v. *Gowing*, 5 Esp. 131; *Nichole* v. *Allen*, 3 C. & P. 36; *In re Plaskett's estate*, 30 L. J. Eq. 606; *Moncrief* v. *Ely*, *supra ; Birdsall* v.

*Edgerton, supra ; Hook* v. *Pratt,* 78 N. Y. 371; 34 Am. Rep. 539.)

*Duncan* v. *Pope* (47 Ga. 445), cited by the appellant, goes no further than to hold that in the absence of a contract for its support a bastard cannot maintain an action against his putative father, or his estate. On the other hand it holds that if he voluntarily makes an agreement for it, not only may the father be bound but his representatives, while *Nine* v. *Starr* (8 Oreg. 49), also cited by him, decides only that when the mother alone is bound to maintain the child she cannot maintain· an action upon the father's agreement to pay her 'for doing so. But even in such a case, if any provision for the child beyond such legal maintenance be included in the consideration, it is sufficient, and the promise valid. (*Smith* v. *Roche,* 6 C. B. [N. S.] 223; *Follit* v. *Koetzow,* 2 E. & E. 730.) In *Moncrief* ·v. *Ely* (*supra*), it is .held that at common law an action will lie against him for the support of his child upon an express promise, or if he had adopted the child as his own, upon an implied promise in favor of the party maintaining it ; but the plaintiff in that case failed to recover, because there was no evidence of a promise express or implied. This case was followed in *Birdsall* v. *Edgerton* (*supra*). Indeed it has never yet been held that there was any thing illegal in an undertaking by a putative father to support his bastard, or to pay a sum of money in consideration of such support being furnished by .another, though that other person was the mother of the child. Upon principle and authority such a promise must be regarded as valid.

But notwithstanding this, the learned counsel for the appellant argues that the promises made by the testator to Mrs. Voris, Mrs. Knapp and Mrs. Story were without consideration — mere naked promises, and not enforceable. The learned referee finds that the testator did not expressly promise to pay the plaintiff's relatives, nor any one else, for the expenses incident " to her maintenance and support, and whatever was said by him was contingent on the plaintiff's outliving him, and was limited to such provision as he might make for her by his

will." And before us the appellant, while contending that the
testator made no express promise to pay them, adopts the
language of the referee and declares that "his promise was
contingent on plaintiff's outliving him," adding, "his words
may have held out a hope of repayment, but there was
no promise." If it rested there it would be difficult for a court
to hesitate in pronouncing against such designed evasion
of obligation. There was in any aspect a precise representation
of an intention on the part of the testator at a future time, and
in a specified manner, to assume the burden of expense for
those things he solicited his child's relatives to perform. By
that avowed intention they were induced to act. It is imma-
terial that no promise in response thereto was made by them.
Their conduct was a sufficient acceptance of his proposition
and furnished the consideration for his undertaking. It was
indeed contingent. It consisted in the doing of acts by the
promisees, which, it is true, they need not have done unless
they chose, but being done at the instigation of the testator,
completed the contract and made the promise binding. (*Coles* v.
*Pilkington*, L. R., 19 Eq. Cas. 178; *Booth* v. *C. Rolling Mill
Co.*, 74 N.Y. 15.) In a book of considerable antiquity, but still
of authority (Doctor and Student, dialogue 2, chap. 24), after
speaking of naked promises upon which no action would lie,
the learned author says: "If he, to whom the promise is made,
have a charge by reason of the promise, which he hath also per-
formed, then in that case he shall have an action for that thing
that was promised, though he that made the promise have no
worldly profit by it." And among other illustrations it is said,
"if a man say to another, marry my daughter and I will give
thee twenty pounds; upon this promise an action lieth if he
marry his daughter." And in this case, the author says, "he
cannot discharge the promise, though he thought not to
be bound thereby; for it is a good contract, and he may have
*quid pro quo*, that is to say, the preferment of his daughter for
his money." And so here the testator is bound, although he in-
tended only to prevaricate.

The books are full of cases where such contracts are sup-

ported. Among modern ones are *L'Amoreux* v. *Gould*, (7 N. Y. 349), and *Marie* v. *Garrison* (83 id. 14). In the first it was held that where in consideration that A. would pay certain notes upon which he was an indorser, but not then charged as such, or under any obligation to pay the same, B. agrees to pay him a certain sum of money; if A. does pay the notes he furnishes a consideration for the agreement, and may enforce it against B. It is obvious that at the time the agreement was entered into there was no mutuality in the contract, because A. came under no obligation to pay; but when he did pay, the consideration was supplied and the promise attached. So in a case where an order for goods is given, it is said to be in effect an offer to purchase and the sale to be complete when they are furnished, and when one offers to supply goods for another at a certain price, he is bound by an order given in accordance with the tender. Upon the same principle a reward may be legally claimed by one complying with the conditions on which it is offered, although the promisor could sue no one for not doing the thing called for (*Jones* v. *Phœnix Bank*, 8 N. Y. 228; *Pierson* v. *Morch*, 82 id. 503). And it makes no difference that the promise is to make compensation by will.

At the death of the testator the consideration had been fully performed, and the promise attached. Its enforcement therefore may stand upon the principle that where one person assumes a charge, or alters his position, or does any act by reason of a promise or representation made by another, the person making the promise or representation cannot withdraw from it, but is bound by it, although he did not intend to be. Moreover in the case before us the testator did have a full *quid pro quo*. What he desired was that his daughter should be well cared for and educated. He wanted also that this should be done by his daughter's relatives, and to stimulate them to do that which they were in no sense bound to do, he represented or promised that provision should be made for her by will. It was as if he had said, " Take good care of her, clothe and feed her and educate her during my lifetime, and at my death she shall have from my estate a sum at least equal to the cost of all you do and

expend for her." He had his wish. They performed with his sanction the acts which he desired. He has not done the thing he promised to do in return, and as his death limited the time for his performance, his omission and the happening of that event constitute a breach and complete a cause of action which the law will enforce against his estate. (_Jacobson_ v. _Executors of Le Grange_, 3 Johns. 199 ; _Patterson_ v. _Patterson_, 13 id. 379.)

If I am right in these conclusions there is before us a valid contract made between the testator and the several persons named, for the benefit of the plaintiff. The only remaining question is one of parties—who should bring the action for its enforcement. As she had the sole beneficial interest in the contract, it was, we think, properly brought in her name. This would seem plain enough upon principle, but it is also well established by authority. In _Dutton and Wife_ v. _Poole_ (2 Levinzs, 210), decided in the time of Charles II, a son promised his father, upon a consideration moving from him, to pay his daughter one thousand pounds. Upon default the daughter sued. After verdict for the plaintiff it was argued in arrest of judgment that the action should have been by the father, not the daughter, for the promise it was said was made to the father, and the daughter was neither privy nor interested in the consideration, nothing being due to her. The court seemed to hesitate, but after more than one hearing and citation by counsel of cases _pro_ and _con_, it was held in favor of the plaintiff, the chief justice saying that there was such apparent consideration of affection from the father to his children, for whom nature obliges him to provide, that the consideration and promise to the father may well extend to the children, and the judgment then given was, on error brought, affirmed in the Exchequer Chamber.

A century later Lord Mansfield, in _Martin_ v. _Hind_ (Cowper 437-443), referring to _Dutton_ v. _Poole_ (_supra_) said, " It was matter of surprise how a doubt could have arisen in that case."

A few years after (1806) a similar question came before the Supreme Court of this State, in _Schemerhorn_ v. _Vander-_

*heyden* (1 Johns. 139), where the facts were that in consideration of one J. C., the father of the plaintiff's wife, assigning to the defendant certain personal property, the latter promised to purchase for the daughter a cherry desk. He failed to do so, and for that breach the action was brought by the husband of the daughter, he suing in her right. It was objected that no action could be maintained by the plaintiff on the promise made to J. C.; but the court held otherwise, saying, "where one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise," citing *Dutton* v. *Poole* (*supra*), and saying the same principle has since that time been repeatedly sanctioned by the decisions of the English courts.

A different rule is said to prevail in those tribunals at the present time (per Wightman, J., in *Tweddle* v. *Atkinson*, 1 Best & Smith, Q. B. 393; 101 Eng. Com. Law R. 393), and there even in equity the doctrine of the earlier cases may be considered as unsettled. (Pollock's Principles of Contract, 196.) But in this State it has, I believe, been uniformly adhered to. In 1817 it seems to have been approved by Chancellor Kent. (*Cumberland* v. *Codrington*, 3 Johns. Ch. 254) The question came directly before him in 1823, and it was answered in the same way upon the principle asserted in *Dutton* v. *Poole*, (*supra*), and the learned chancellor held that where a father conveyed land to his son on his covenanting to pay an annuity to his mother during her widowhood, she might maintain an action on the covenant so made for her benefit (*Shepard* v. *Shepard*, 7 J. Ch. 56), and in 1845 his successor says it has been the settled law from the time of the decision of the case of *Dutton* v. *Poole* (*supra*), down to the then present time, that a party for whose benefit a promise is made may sue in assumpsit upon such promise, although the consideration for such promise was a consideration between the promisor and a third person.

Such also was the conclusion of the late Supreme Court of this State after a full examination of the authorities in *Barker* v. *Bucklin* (2 Denio, 45). Also by the present Supreme Court in 1859 in *Judson* v. *Gray*, affirmed by this court (17 How.

Pr. 289). In *Burr* v. *Beers* (24 N. Y. 178), the judgment was in terms supported upon as was said, "the broad principle that if one person make a promise to another for the benefit of a third person, that third person may maintain an action on the promise," and DENIO, J., after a review of the authorities, said "We must regard the point as definitely settled so far as the courts of this State are concerned." It seems unnecessary to follow the line of authorities further. The plaintiff is within the rule. The contract upon which she sues was made for her benefit as its object. It is the doctrine of the first and last case that she may enforce it. This conclusion is also in harmony with the general current of authority. In the Supreme Court of the United States *Hendrick* v. *Lindsay*, (93 U. S. Rep. [3 Otto] 143), it is said, "The right of a party to maintain assumpsit on a promise not under seal, made to another for his benefit, although much controverted, is now the prevailing rule in this country." This conclusion makes it unnecessary to consider the ground on which the court below held that a partial recovery could be had in this case.

It may be conceded that if the plaintiff had not outlived the testator, no action at all would lie, for that she should, of the two, be the longest liver was one of the conditions upon which his promise was made. He died first. The condition then was fulfilled. The plaintiff is, therefore, entitled to recover of the defendants the amount found by the referee to have been paid, laid out and expended for her by her relatives, as above stated, together with interest from the death of the testator.

The order of the General Term should, therefore, be affirmed, and judgment absolute ordered for the plaintiff, with costs.

All concur, except ANDREWS, J., who dissents.

Order affirmed and judgment accordingly.