AUGUSTA BOGARDUS, RESPONDENT, v. EDWIN YOUNG, AS EXECUTOR OF THOMAS CORNELL, DECEASED, APPELLANT.

*Statute of limitations — consideration for a promise by a son to his father to provide for the children of a second marriage — when a right of action accrues — Code of Civil Procedure, sec.* 410.

Peter Cornell married twice. By his first marriage he had a son, Thomas, and by the second five children. In 1840 Peter received from his former partner certain notes which he handed to his son Thomas in 1860, saying that he had some information that they could be collected.

Peter, who resided with his second wife on a farm which belonged to her, about the time of his death, in 1860, had a conversation with Thomas, at which the second wife was present, when it was said that all her money was in the farm, and Peter said he thought the children of his second wife should be provided for. Thomas thereupon said : "Father, don't worry, they will be provided for, I will give each of them five thousand dollars and set Joseph (the only son) up in business."

During the last illness of the second wife, in 1879, she had a conversation with Thomas, in which she said : "You know you had all my money in the business. I am on my death bed now and I think the girls should be paid the money agreed upon long ago." He replied : "They shall be paid that money, and more, too."

Thomas Cornell died in 1890, and in the same year a claim was presented against his estate for $5,000, with interest thereon from October, 1860, by one of the children of the second marriage, who was present at the conversation between Thomas and her mother in 1879, and was then of full age.

This claim was referred, under the statute, and the plaintiff recovered.

*Held,* that the claim could not be sustained.

That the promise of Thomas Cornell, made in 1860, was without consideration.

That, so far as the stale notes were concerned, it did not appear that they had any value or that Peter Cornell transferred the title to them to Thomas Cornell.

That no consideration arose out of the farm of the second wife, since it did not appear that Thomas Cornell had any interest whatever in it.

That no consideration could be established by the conversation, in 1879, which concerned past transactions.

That, assuming, however, that a consideration was made out, it could not uphold a promise by Thomas Cornell to pay money to his step-sister Augusta Bogardus.

The cases relative to a promise made for the benefit of a third person, reviewed.

That, whether or not the relationship existing between Augusta Bogardus and her parents might be deemed to create such a privity, in the nature of a duty or obligation from her parents to her, as would satisfy that branch of the rule in such cases, there was not, in any event, a present consideration moving from Peter Cornell to Thomas.

That if it be assumed that the promise was a valid one, there was nothing in it postponing its performance or preventing Augusta Bogardus from at once suing upon it when it was made in 1879.

That the evidence did not show that Thomas Cornell received the alleged moneys either from his father or his step-mother as a deposit or in trust, and that, therefore, no demand was necessary or proper before the statute of limitations would begin to run.

That, therefore, Augusta Bogardus was in a position to sue in 1879.

That, even assuming such a demand to be necessary, the time within which an action must be commenced must, under section 410 of the Code of Civil Procedure, be computed from the time when the right to make the demand was complete.

That that time would be six years from the conversation in 1879, and that, even in this view, the action was barred by the statute of limitations.

APPEAL by the defendant Edwin Young, as executor of Thomas Cornell, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Ulster on the 11th day of February, 1892, upon a recovery by the plaintiff of $5,387.50 and costs, after a trial before a referee, with notice of an intention to bring up for review upon the appeal an order of said court, entered in said clerk's office on the 9th day of February, 1892, confirming the report of a referee directing judgment for the plaintiff and denying defendant's motion to set aside the report and for a new trial.

*John J. Linson,* for the appellant.

*William Lounsbery* and *J. Newton Fiero,* for the respondent.

MAYHAM, P. J.:

Thomas Cornell, the testator, was a son of Peter Cornell. After the death of testator's mother, Peter Cornell married a Mrs. Woodmansee. The issue of this second marriage was five children, one son and four daughters, of whom this plaintiff is one. In 1840 Peter Cornell received from a former partner, with whom he at that time dissolved his business relations, certain promissory notes. Nothing appears to have been paid on these notes, and in 1860 Peter Cornell handed them down to his son Thomas, stating at the time that he had some information that they could be collected.

From the time of Peter's second marriage until the time of his death he resided with his wife on a farm on which she had resided during her widowhood. Peter Cornell died November 11, 1860, and shortly before his death he and his son Thomas had a conversation which the witness gives as follows: "Mr. Cornell was very restless and wanted Tommy sent for; Tommy was sent for and had a talk with him. He said he felt as if he could not die unless some provision was made for those younger children." His wife was very much dissatisfied with regard to her money; it was all in that property. He said to Thomas Cornell "that he felt that these younger children ought to be provided for; that he felt as if his time was short." He says: "Father, don't worry; they will be provided for; I will give each of them five thousand dollars, and set Joseph up in business." In answer to a question as to what was said by Peter about his wife's money, the witness said: "There was nothing particular spoken of, only that all her money she got from her father was in that property — the property where they lived.'

The case shows that Peter's wife was present at this conversation and that all Peter's girls were children at that time. The mother of the plaintiff and step-mother of testator died May 7, 1879, and during her last sickness, in 1878 or 1879, the following conversation occurred between her and testator — she said: "Major, you know you had all my money in the business; I am on my death-bed now, and I think the girls should be paid the money agreed upon long ago." He said: "Are any of them in need?" She said "No, not for bread." He replied: "They shall be paid that money, and more, too." At this conversation plaintiff and one of her sisters were present.

There is some evidence in the case tending to show that the testator expressed himself under obligations to do something for his half-sisters, and the plaintiff proved, under the defendant's objection, that he had given one of them property valued at about ten thousand dollars.

The claim presented by the plaintiff, and rejected by the executor, is in the following form:

"ESTATE OF THOMAS CORNELL TO AUGUSTA BOGARDUS, *Dr.*

"For five thousand dollars, with interest thereon from October, 1860. At the date last mentioned the said Thomas Cornell acknowledged himself indebted in the sum mentioned, and agreed to pay the sum, with interest, on demand, as a part payment of his indebtedness to Peter Cornell and Mary C. Cornell."

On the trial the defendant insisted that no cause of action was made out by the plaintiff, and that the alleged claim was barred by the statute of limitations. The referee found for the plaintiff $5,000, with interest from September 2, 1890.

The appellant insists that this evidence does not establish the existence of a binding contract on the part of the testator, and creates no liability against his estate. It is not disputed but that the testator told his father, in the conversation in 1860, that he would give each of the girls $5,000 and set the son Joseph up in business, but it is claimed that that promise was wholly without consideration, and was, at most, only a promised gratuity made to quiet the anxiety of his father, and was a *nudum pactum*. The only evidence in the case of any business transaction between testator and his father, Peter Cornell, was the delivery of the stale notes received by him from his father in 1840, and by him delivered to testator in 1860, and it does not appear from that transaction that testator acquired any title to the notes, or that they were at the time of any value; and there is nothing in that transaction from which it can be legally inferred that those notes formed the consideration for the promise made to pay the plaintiff and her sisters $5,000 each. No mention of these notes was made at the time of making such promise. But it is said that at this time he spoke of his wife's dissatisfaction in regard to her money, and that all of her money was in the place or farm on which Peter lived; but it

nowhere appears that the testator had any interest in that farm, derived either from Peter or his wife, that could form a basis or consideration for the promise made Peter to pay money to the plaintiff. But it is sought to find a consideration for this promise in the conversation which occurred between testator and his step-mother, mother of this plaintiff, in 1879, eighteen years after Peter's death. In that conversation she said that testator had all her money in his business, and thought the girls should be paid the money agreed upon long ago, and testator said : " They shall be paid that money, and more, too."

The testimony of Mrs. Overbaugh, it is claimed by the respondent, strengthens this theory of a consideration for the promise by the testator to his father to pay money to the plaintiff. She makes her father say, in that conversation narrated by the other witnesses : " I have a family of small children and nothing to leave them ; mother is very much dissatisfied and says you have had her money." He said : " Don't worry ; to cancel that debt I will give each of the girls five thousand dollars and put J. in business."

There is some evidence in the case of a declaration of the testator, that he intended to give to his sisters something, or make some pro-vision for them in his will, which, it is claimed by respondent, tends to prove that testator recognized some obligation or liability to his sisters ; but the whole evidence bearing upon the question of a valid consideration for his promise, is at best, but very slight and unsatis-factory. But it is urged that as these acts and statements of the testator may admit of more than one interpretation, and the effect to be given to them may, to some extent, depend upon the inten-tion of the testator and the manner in which he intended them to be understood by the persons to whom they were made, the mean-ing of his language becomes a mixed question of law and fact, proper to be passed upon as a question of fact by the referee, and that his determination upon such facts ought not to be disturbed on appeal. ( *White* v. *Hoyt,* 73 N. Y., 505.) But the defendant insists that even if there was an antecedent obligation existing against the testator and in favor of Peter Cornell or his wife, that of itself would not be a good consideration to uphold a promise by the testator to pay the plaintiff, a third person, between whom and Peter Cornell, the promisee, there was no privity ; and we are

referred, by the learned counsel for the appellant, to the cases of *Fairchild* v. *Feltman* (32 Hun, 398); *Kelly* v. *Roberts* (40 N. Y., 432); *Vroman* v. *Turner* (69 id., 284), and *Gates* v. *Hames* (28 N. Y. St. Rep., 313), in support of that proposition.

In *Fairchild* v. *Feltman* (*supra*), one C. was indebted to plaintiff, and, at the same time, defendant was indebted to C., and while so indebted promised plaintiff to pay plaintiff the amount of his indebtedness to C. C. did not release the defendant from his liability, but gave him credit for the sum agreed to be paid on his books. Upon this state of facts plaintiff sued the defendant on his promise, and the court held that the defendant's promise to pay plaintiff was a *nudum pactum*. It was nothing more than a parol executory promise, without consideration, to discharge C.'s obligation to the plaintiff.

In *Vroman* v. *Turner* (69 N. Y., 280), the court says: "To give to a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party; and second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter, which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally."

In *Gates* v. *Hames* (28 N. Y. St. Rep., 313), the defendant, in consideration of the discharge of a mortgage held against her by her mother, promised to pay the amount thereof by boarding the latter if she chose to live with her, and if not, to pay the same at her mother's death to five of her next of kin, of whom the plaintiff was one. The mother failed to board out the amount, and the plaintiff after the mother's death brought an action to recover one-fifth of the amount on such promise, and it was held that she could not recover, as the promisee, who was the grandmother of the plaintiff, was under no obligation to the plaintiff and the benefit she sought to obtain for her grandchild was a mere gratuity.

In *Todd* v. *Weber* (95 N. Y., 188) the putative father of a bastard child acknowledged his paternity, and requested the mother and grandmother to take good care of the child and bring her

up right, and he would see that it was all right; some twelve years later, and after the mother and grandmother had supported and. cared for the child, as requested by the father, the mother asked him if .he remembered what he had promised to do for the child and he answered, "Yes, and I will do well by her, and if she outlives me will remember her in my will." He frequently told the plaintiff's mother and grandmother, in substance, to spare no pains and expense in educating her, and on being told that it was expensive he said, "You will get that all back," and similar expressions.

The court held that these promises, followed by the rendering of the services and incurring the expense, constituted a valid contract; and that as the plaintiff had the sole beneficial interest in the contract she could recover. In that case, however, it will be noticed that there was a present consideration, and the services were rendered and expense incurred upon the strength or faith of the promise that they should be paid for or compensated for in the testator's will.

This case, therefore, differs from the case at bar in this, that there was no present or immediate consideration moving from the promisor to the promisee; and that seems to be the distinguishing feature between the case of *Todd* v. *Weber* and cases followed in it, and that of *Gates* v. *Hames* (*supra*), and the cases cited by DWIGHT, J., in his opinion in the latter case.

The rule to be deduced from these and other cases seems to be that when there is a present consideration moving from the promisee to the promisor upon which the promisor agrees to pay money to a third person, to whom the promisee owes some debt, duty or obligation, such promise may be enforced by the third person. Two things must concur: First. The passing of a present consideration from the promisee to the promisor. Second. The existence of some debt, duty or obligation from the promisee to the third person before a recovery in such case can be upheld. We do not think in this case that both of these conditions have been proven to have concurred. Clearly there was no present consideration for the promise passing from Peter Cornell or his widow to the testator at the time of his making the promise, nor was there any debt, obligation or duty due to Peter Cornell or his widow from the plaintiff which she could enforce against them or either of them, but we are not prepared to say that the relationship existing between the plaintiff and her parents was

not such as to create a privity between her and them, which might meet the last condition above referred to. (*Gates* v. *Hames*, 28 N. Y. St. Rep., 313; *Vroman* v. *Turner*, 69 N. Y., 280; *Kelly* v. *Roberts*, 40 id., 432; *Fairchild* v. *Feltman*, 32 Hun, 398.)

But the first condition is nowhere met by the evidence; and there was, therefore, no valid agreement enuring to the benefit of the plaintiff which she can enforce by action.

But if it should be held that the agreement of the testator to pay this money to plaintiff was valid, then there was nothing in that promise which in anyway postponed its performance or prevented the plaintiff from enforcing it as soon as it was made. There seems to be no evidence to support the finding of the referee that this money was payable on demand. The promise, as proved, was, that "I will give each of them five thousand dollars." This was said to the father. To the mother the promise was: "They shall have that, and more, too."

There was nothing in either of these statements that indicated the postponement of the payment until a demand was made for it. If this promise created a valid and binding agreement on the part of the testator to pay this money to the plaintiff, that payment could have been enforced at once; and if that were so, an action was maintainable upon it as soon as it was made; and unless the plaintiff was under some disability the statute of limitations would commence to run from that time   The conversation between the testator and plaintiff's mother, in which testator is claimed to have last promised to pay the plaintiff, was in 1879, and in the presence of the plaintiff, when, from the evidence, it appears that she must have been about thirty years of age. No disability of infancy existed at that time on the part of the plaintiff; and if · the plaintiff had a valid cause of action on that promise, the statute of limitations ran from that time; and this claim appears to have been presented on the 20th of February, 1890, twelve years after the alleged promise of the testator to plaintiff's mother, and thirty years after the alleged promise to Peter Cornell. But it is insisted that money was received by the testator from his father or step-mother as a deposit or trust, and did not, therefore, become due or payable until demanded by the *cestui que trust*, or some one in her behalf. We see nothing in the evidence to justify that contention. Neither Peter Cornell or his wife,

in terms, imposed any trust on the testator for money due them, or either of them; nor did they, or either of them, direct the testator to hold such money for the benefit of the plaintiff.

Unless, therefore, the agreement of testator to pay money to the plaintiff at the request of his father or step-mother created that relation, no trust was created. The case does not show that the testator held money of his father or step-mother as a deposit with him, but, on the contrary, the account on which this claim is prosecuted shows upon its face the testator bore the relation of debtor to them at the time of making the agreement to pay plaintiff, as appears by the claim which we have above set out in full.

Whatever money the testator owed, either his father or step-mother cannot, therefore, on this evidence, be claimed to be money deposited with him, by them, and held as a deposit, for which a demand was necessary, but rather under the ordinary relation of debtor and creditor.

There is nothing in this case to show, or from which it can be reasonably inferred, that a demand would have been necessary to enable Peter or Mary Cornell to recover any money due from Thomas in the lifetime of all the parties. The debt, if any existed, was not, as between them, impressed with any trust; nor was it a deposit.

In *Payne* v. *Gardiner* (29 N. Y., 146) it was held that an action could not be maintained against a depository until after a demand.

In *Matter of Waldron* (28 Hun, 481), the writing given by defendant acknowledged the possession of a certain sum of money, and that it was held in trust and a demand was necessary to set the statute in operation.

In *Boughton* v. *Flint* (74 N. Y., 476), the husband, in his lifetime, had collected money on a mortgage belonging to his wife, which she allowed and requested him to retain; the transaction was a deposit, and not a loan, and a demand was necessary to set the statute in motion.

These cases are cited by the plaintiff as authority that the debt due from executor to his father and step-mother was a deposit, and that a demand was necessary to set the statute in operation. I fail to see their analogy to the case at bar. In each case they were, in effect, but deposits, and in their very nature required a demand

before an action could be maintained on them, or the statute would commence to run.

In the case at bar, as we have seen, the claim was that testator owed his father and step-mother, and at their request agreed to pay the same to the plaintiff, and, if valid, was but the transfer of that debt, with whatever right of action existed against the testator to the plaintiff, who became clothed with all of the powers of a creditor of the defendant, and could, as such, maintain an action at law upon such claim. No trust was, therefore, created in favor of the plaintiff by the testator's agreement to pay her any sum due from testator to her parents.

But if it could be held in this case that a demand were necessary, it would seem that the plaintiff has slept upon her rights, and that the statute of limitations had attached before this claim was presented to the executor. The Code, section 410, requires that: "When a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, except in the following cases:" The first exception relates to the detention of money held by an agent, trustee, attorney or other person acting in a fiduciary capacity, and then the time must be computed from the time the person having the right has actual knowledge of the facts upon which the right depends.

The second is when a deposit is made, not to be paid at a fixed time, but only on special demand.

Tested by these rules, the plaintiff should, under the above section, have commenced her action within six years after the conversation which she heard between her mother and testator, in 1879. Subdivisions 1 and 2 of this section cannot be made to apply in this case; the money was not held by testator as agent, attorney or in any fiduciary capacity, as required in subdivision 1, nor was it a deposit to be paid only on a special demand, as required by subdivision 2 of that section.

It seems, therefore, that the claim, if valid in its inception, was, at the time of the presentation to the executor, barred by the statute of limitations, and he was not only justified in rejecting it and refusing to pay it, but was bound, in the discharge of his duty as

executor, to treat it as a stale demand and interpose the statute of limitations as a defense.

The judgment must be reversed, the referee discharged and a new trial ordered, costs to abide the event.

PUTNAM and HERRICK, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide the event; referee discharged.