### BOGARDUS *v.* YOUNG.

*(Supreme Court, General Term, Third Department. July 2, 1892.)*

1. ASSUMPSIT—PROMISE FOR BENEFIT OF ANOTHER.

To recover on a promise made to another to pay money to plaintiff it must be shown that the promise was founded on a present consideration moving from the promisee to the promisor, and that the promisee owed plaintiff some debt, duty, or obligation.

2. TRUSTS—CREATION—PROMISE TO PAY MONEY.

A promise made by defendant to a creditor to pay a sum of money to plaintiff does not create a relation of trust between plaintiff and defendant, and no demand is necessary to give a right of action on such promise.

Appeal from judgment on report of a referee.

Action by Augusta Bogardus against Edwin Young, executor of Thomas Cornell, deceased. From a judgment for plaintiff, entered on the report of a referee, defendant appeals. Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

*Linson & Van Buren*, (*John J. Linson*, of counsel,) for appellant. *William Lounsbery*, (*J. Newton Fiero*, of counsel,) for respondent.

MAYHAM, P. J. Thomas Cornell, the testator, was a son of Peter Cornell. After the death of testator's mother, Peter Cornell married a Mrs. Woodmansee. The issue of this second marriage was four children,—one son and four daughters,—of whom this plaintiff is one. In 1840, Peter Cornell received from a former partner, with whom he at that time dissolved his business relations, certain promissory notes. Nothing appears to have been paid on these notes, and in 1860, Peter Cornell handed them down to his son, Thomas, stating at the time that he had some information that they could be collected. From the time of Peter's second marriage until the time of his death he resided, with his wife, on a farm, on which she had resided during her widowhood. Peter Cornell died November 11, 1860, and shortly before his death he and his son, Thomas, had a conversation, which the witness gives as follows: "Mr. Cornell was very restless, and wanted Tommy sent for. Tommy was sent for, and had a talk with him. He said he felt as if he could not die unless some provision was made for those younger children." His wife was very much dissatisfied with regard to her money. It was all in that property. He said to Thomas Cornell "that he felt that these younger children ought to be provided for; that he felt as if his time was short." He says: "Father, don't worry. They will be provided for. I will give each of them five thousand dollars, and set Joseph up in business." In answer to a question as to what was said by Peter about his wife's money, the witness said: "There was nothing particular spoken of, only that all her money she got from her father was in that property,—the property where they lived." The case shows that Peter's wife was present at this conversation, and that all Peter's girls were children at that time. The mother of the plaintiff and stepmother of testator died May 7, 1879, and during her last sickness, in 1878 or 1879, the following conversation occurred between her and testator. She said: "Major, you know you had all my money in the business. I am on my deathbed now, and I think the girls should be paid the money agreed upon long ago." He said: "Are any of them in need?" She said: "No, not for bread." He replied: "They shall be paid that money, and more, too." At this conversation plaintiff and one of her sisters were present. There is some evidence in the case tending to show that the testator expressed himself under obligations to do something for his half-sisters, and the plaintiff proved, under the defendant's objection, that he had given one of them property valued at about $10,000. The claim presented by the plaintiff and rejected by the executor is in the following form: "Estate of Thomas Cornell, to Augusta Bogardus, Dr For five thousand dollars, with interest thereon from October, 1860. At the date last mentioned the said Thomas Cornell acknowledged himself indebted in the sum mentioned, and agreed to pay the same, with interest, on demand, as a part payment of his indebtedness to Peter Cornell and Mary C. Cornell." On the trial the defendant insisted that no cause of action was made out by the plaintiff, and that the alleged claim was barred by the statute of limitations. The referee found for the plaintiff $5,000, with interest from September 2, 1890.

The appellant insists that this evidence does not establish the existence of a binding contract on the part of the testator, and creates no liability against his estate. It is not disputed but that the testator told his father in the conversation in 1860 that he would give each of the girls $5,000 and set the son Joseph up in business, but it is claimed that that promise was wholly without consideration, and was at most only a promised gratuity, made to quiet the anxiety of his father, and was a *nudum pactum*. The only evidence in the case of any business transaction between testator and his father, Peter Cornell, was the delivery of the stale notes received by him from his father

in 1840, and by him delivered to testator in 1860; and it does not appear from that transaction that testator acquired any title to the notes, or that they were at the time of any value; and there is nothing in that transaction from which it can be legally inferred that those notes formed the consideration for the promise made to pay the plaintiff and her sisters $5,000 each. No mention of these notes was made at the time of making such promise. But it is said that at this time he spoke of his wife's dissatisfaction in regard to her money, and that all of her money was in the place or farm on which Peter lived; but it nowhere appears that the testator had any interest in that farm, derived either from Peter or his wife, that could form a basis or consideration for the promise made Peter to pay money to the plaintiff. But it is sought to find a consideration for this promise in the conversation which occurred between testator and his stepmother—mother of this plaintiff—in 1879, 18 years after Peter's death. In that conversation she said that testator had all her money in his business, and thought the girls should be paid the money agreed upon long ago; and testator said, "They shall be paid that money, and more, too." The testimony of Mrs. Overbaugh, it is claimed by the respondent, strengthens this theory of a consideration for the promise by the testator to his father to pay money to the plaintiff. She makes her father say in that conversation, narrated by the other witnesses: "I have a family of small children, and nothing to leave them. Mother is very much dissatisfied, and says you have her money." He said: "Don't worry. To cancel that debt I will give each of the girls five thousand dollars, and put J. in business."

There is some evidence in the case of declarations of the testator that he intended to give to his sisters something, or make some provision for them in his will, which it is claimed by respondent tends to prove that testator recognized some obligation or liability to his sisters; but the whole evidence bearing upon the question of a valid consideration for his promise is at best but very slight and unsatisfactory. But it is urged that, as these acts and statements of the testator may admit of more than one interpretation, and the effect to be given to them may to some extent depend upon the intention of the testator and the manner in which he intended them to be understood by the persons to whom they were made, the meaning of his language becomes a mixed question of law and fact, proper to be passed upon as a question of fact by the referee, and that his determination upon such facts ought not to be disturbed on appeal. *White* v. *Hoyt*, 73 N. Y. 505. But the defendant insists that, even if there was an antecedent obligation existing against the testator and in favor of Peter Cornell or his wife, that, of itself, would not be a good consideration to uphold a promise by the testator to pay the plaintiff,—a third person, between whom and Peter Cornell, the promisee, there was no privity,—and we are referred by the learned counsel for the appellant to the cases of *Fairchild* v. *Feltman*, 32 Hun, 398; *Kelly* v. *Roberts*, 40 N. Y. 432; *Vrooman* v. *Turner*, 69 N. Y. 284; and *Gates* v. *Hames*, (Sup.) 8 N. Y. Supp. 287,—in support of that proposition. In *Fairchild* v. *Feltman*, *supra*, one C. was indebted to plaintiff, and at the same time defendant was indebted to C., and while so indebted promised plaintiff to pay plaintiff the amount of his indebtedness to C. C. did not release the defendant from his liability, but gave him credit for the sum agreed to be paid on his books. Upon this state of facts plaintiff sued the defendant on his promise, and the court held that the defendant's promise to pay plaintiff was a *nudum pactum*. It was nothing more than a parol executory promise, without consideration, to discharge C.'s obligation to the plaintiff. In *Vrooman* v. *Turner*, 69 N. Y. 280, the court says: "To give to a third person who may derive a benefit from the performance of the promise an action, there must be—*First*, an intent by the promisee to secure some benefit to the third party; and, *second*, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter, which would give

a legal or equitable claim to the benefit of the promisor, or an equivalent from him personally." In *Gates* v. *Hames*, (Sup.) 8 N. Y. Supp. 287, the defendant, in consideration of the discharge of a mortgage held against her by her mother, promised to pay the amount thereof by boarding the latter, if she chose to live with her, and, if not, to pay the same at her mother's death to five of her next of kin, of whom the plaintiff was one. The mother failed to board out the amount, and the plaintiff, after the mother's death, brought an action to recover one fifth of the amount on such promise; and it was held that she could not recover, as the promisee, who was the grandmother of the plaintiff, was under no obligation to the plaintiff, and the benefit she sought to obtain for her grandchild was a mere gratuity. In *Todd* v. *Weber*, 95 N. Y. 188, the putative father of a bastard child acknowledged his paternity, and requested the mother and grandmother to take good care of the child, and bring her up right, and he would see that it was all right. Some 12 years later, and after the mother and grandmother had supported and cared for the child as requested by the father, the mother asked him if he remembered what he had promised to do for the child, and he answered: "Yes, and I will do well by her, and, if she outlives me, will remember her in my will." He frequently told the plaintiff's mother and grandmother in substance to spare no pains and expense in educating her, and, on being told that it was expensive, he said, "You will get that all back," and similar expressions. The court held that these promises, followed by the rendering of the services and incurring the expense, constituted a valid contract, and that, as the plaintiff had the sole beneficial interest in the contract, she could recover. In that case, however, it will be noticed that there was a present consideration, and the services were rendered and expense incurred upon the strength or faith of the promise that they should be paid for, or compensated for in the testator's will. This case, therefore, differs from the case at bar, in this: that there was no present or immediate consideration moving from the promisor to the promisee, and that seems to be the distinguishing feature between the case of *Todd* v. *Weber* and cases followed in it, and that of *Gates* v. *Hames*, *supra*, and the cases cited by DWIGHT, J., in his opinion in the latter case.

The rule to be deduced from these and other cases seems to be that when there is a present consideration moving from the promisee to the promisor upon which the promisor agrees to pay money to a third person, to whom the promisee owes some debt, duty, or obligation, such promise may be enforced by a third person. Two things must concur: *First*, the passing of a present consideration from the promisee to the promisor; *second*, the existence of some debt, duty, or obligation from the promisee to the third person, —before a recovery in such case can be upheld. We do not think in this case that both of these conditions have been proven to have concurred. Clearly there was no present consideration for the promise passing from Peter Cornell or his widow to the testator at the time of his making the promise, nor was there any debt, obligation, or duty due from Peter Cornell or his widow to the plaintiff which she could enforce against them, or either of them, but we are not prepared to say that the relationship existing between the plaintiff and her parents was not such as to create a privity between her and them, which might meet the last condition above referred to. *Gates* v. *Hames*, (Sup.) 8 N. Y. Supp. 287; *Vrooman* v. *Turner*, 69 N. Y. 280; *Kelly* v. *Roberts*, 40 N. Y. 432; *Fairchild* v. *Feltman*, 32 Hun, 398. But the first condition is nowhere met by the evidence, and there was therefore no valid agreement inuring to the benefit of the plaintiff, which she can enforce by action. But if it should be held that the agreement of the testator to pay this money to plaintiff was valid, then there was nothing in that promise which in any way postponed its performance, or prevented the plaintiff from enforcing it as soon as it was made. There seems to be no evidence to support the finding of the referee that this money was payable on demand. The promise, as

proved, was that "I will give each of them five thousand dollars." This was said to the father.  To the mother the promise was, "They shall have that, and more, too." There was nothing in either of these statements that indicated the postponement of the payment until a demand was made for it.  If this promise created a valid and binding agreement on the part of the testator to pay this money to the plaintiff, that payment could have been enforced at once, and, if that were so, an action was maintainable upon it as soon as it was made; and, unless the plaintiff was under some disability, the statute of limitation would commence to run from that time.  The conversation between the testator and plaintiff's mother, in which testator is claimed to have last promised to pay the plaintiff, was in 1878, and in the presence of the plaintiff, when, from the evidence, it appears that she must have been about 30 years of age.  No disability of infancy existed at that time on the part of the plaintiff, and, if the plaintiff had a valid cause of action on that promise, the statute of limitation ran from that time; and this claim appears to have been presented on the 20th of February, 1890,—12 years after the alleged promise of the testator to plaintiff's mother, and 30 years after the alleged promise to Peter Cornell.  But it is insisted that money was received by the testator from his father or stepmother as a deposit or trust, and did not, therefore, become due or payable until demanded by the *cestui que trust*, or some one in her behalf.  We see nothing in the evidence to justify that contention.  Neither Peter Cornell nor his wife in terms imposed any trust on the testator for money due them or either of them, nor did they, or either of them, direct the testator to hold such money for the benefit of the plaintiff.  Unless, therefore, the agreement of testator to pay money to the plaintiff at the request of his father or stepmother created that relation, no trust was created.  The case does not show that the testator held money of his father or stepmother as a deposit with him, but, on the contrary, the account on which this claim is prosecuted shows upon its face the testator bore relation of debtor to them at the time of making the agreement to pay plaintiff, as appears by the claim which we have above set out in full.  Whatever money the testator owed either his father or stepmother cannot, therefore, on this evidence, be claimed to be money deposited with him by them, and held as a deposit, for which a demand was necessary, but rather under the ordinary relation of debtor and creditor.

There is nothing in this case to show or from which it can be reasonably inferred that a demand would have been necessary to enable Peter or Mary Cornell to recover any money due from Thomas in the lifetime of all the parties.  The debt, if any existed, was not, as between them, impressed with any trust; nor was it a deposit.  In *Payne* v. *Gardiner*, 29 N. Y. 146, it was held that an action could not be maintained against a depositary until after a demand.  In *Re Waldron*, 28 Hun, 481, the writing given by defendant acknowledged the possession of a certain sum of money, and that it was held in trust, and a demand was necessary to set the statute in operation.  In *Boughton* v. *Flint*, 74 N. Y. 476, the husband, in his lifetime, had collected money on a mortgage belonging to his wife, which she allowed and requested him to retain.  The transaction was a deposit, and not a loan, and a demand was necessary to set the statute in motion.  These cases are cited by the plaintiff as authority that the debt due from executor to his father and stepmother was a deposit, and that a demand was necessary to set the statute in operation.  I fail to see their analogy to the case at bar.  In each case they were, in effect, but deposits, and in their very nature required a demand before an action could be maintained on them or the statute would commence to run.  In the case at bar, as we have seen, the claim was that testator owed his father and stepmother, and at their request agreed to pay the same to the plaintiff, and, if valid, was but the transfer of that debt, with whatever right of action existed against the testator, to the plaintiff, who became

clothed with all of the powers of a creditor of the defendant, and could, as such, maintain an action at law upon such claim. No trust was therefore created in favor of the plaintiff by the testator's agreement to pay her any sum due from testator to her parents. But if it could be held in this case that a demand were necessary, it would seem that the plaintiff has slept upon her rights, and that the statute of limitations had attached before this claim was presented to the executor. The Code, § 410, requires that, "when a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, except in the following cases." The first exception relates to the detention of money held by an agent, trustee, attorney, or other person acting in a fiduciary capacity, and then the time must be computed from the time the person having the right has actual knowledge of the facts upon which the right depends. The second is when a deposit is made, not to be paid at a fixed time, but only on special demand. Tested by these rules, the plaintiff should, under the above section, have commenced her action within six years after the conversation which she heard between her mother and testator in 1878. Subdivisions 1 and 2 of this section cannot be made to apply in this case. The money was not held by testator as agent, attorney, or in any fiduciary capacity, as required in subdivision 1; nor was it a deposit, to be paid only on a special demand, as required by subdivision 2 of that section. It seems, therefore, that the claim, if valid in its inception, was at the time of the presentation to the executor barred by the statute of limitations, and he was not only justified in rejecting it, and refusing to pay it, but was bound in the discharge of his duty as executor to treat it as a stale demand, and interpose the statute of limitations as a defense. The judgment must be reversed, the referee discharged, and a new trial ordered, costs to abide the event. All concur.