BERYL DUNCAN, an Infant, by LOUISE HARRIS, Her Guardian ad Litem, Respondent, *v.* MILES CLARKE et al., as Administrators D. B. N. of the Estate of MILES DUNCAN, Deceased, Appellants.

Argued January 5, 1955; decided March 10, 1955.

*George Foster, Jr., Alan L. Dingle* and *Alvahteen E. Howard* for appellants. I. The alleged agreement sued upon, being a '' continuing contractual obligation '' extending for twenty-one years, was not intended to be, and could not be, performed until after the lapse of that period and hence it comes squarely within the proscription of the Personal Property Law (§ 31, subd. 1). (*Cohen* v. *Bartgis Bros. Co.*, 264 App. Div. 260, 289 N. Y. 846; *Sack* v. *Beasley*, 282 App. Div. 153; *Smith* v. *Compania Litografica De La Habana*, 127 Misc. 508; *Martocci* v. *Greater New York Brewery*, 301 N. Y. 57; *McGirr* v. *Campbell*, 71 App. Div. 83; *Shapiro* v. *Balaban*, 210 App. Div. 47.) II. Since both the mother and grandmother of respondent were persons interested in the event of the action and likewise were the persons from, through or under whom respondent derived her interest, they were incompetent as witnesses for respondent against her father's estate. The admission of their testimony constituted reversible error. (*Matter of Browning*, 280 N. Y. 584; *Croker* v. *New York Trust Co.*, 245 N. Y. 17; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Matter of Block*, 258 App. Div. 342; *Matter of Cassola*, 183 Misc. 66; *Matter of Ditson*, 177 Misc. 648; *Connelly* v. *O'Connor*, 117 N. Y. 91.)

*George P. Halperin, Herbert Kaufman, Daniel Siegel* and *Leon Dicker* for respondent. I. The agreement is without the Statute of Frauds. (*Burger* v. *Neumann*, 275 App. Div. 710, 300 N. Y. 495; *Cohen* v. *Bartgis Bros. Co.*, 264 App. Div. 260, 289 N. Y. 846; *McKinney* v. *McCloskey*, 8 Daly 368, 76 N. Y. 594.) II. Neither the mother nor the grandmother was under any statutory disability to testify as to the making of the agreement. (*Rosseau* v. *Rouss*, 180 N. Y. 116.) III. Assuming *arguendo* that the doctrine of *Rosseau* v. *Rouss* does apply to a situation such as is here presented, it would impinge only upon the testi-

mony of the grandmother. (*Todd* v. *Weber,* 95 N. Y. 181; *Connelly* v. *O'Connor,* 117 N. Y. 91.) IV. Under the doctrine codified in section 106 of the Civil Practice Act, and the cases which have applied that doctrine to alleged error in applying section 347, the error, if any, does not militate against affirmance. (*Matter of Bernsee,* 141 N. Y. 389; *Hutton* v. *Smith,* 175 N. Y. 375.)

VAN VOORHIS, J. This action is brought by a four-year-old girl through her unwed mother as guardian ad litem against the administrators *d. b. n.* of the estate of her father, to obtain a judgment presently anticipating in a lump sum the installments which it is alleged in the complaint that he promised to pay during the next sixteen years for the child's maintenance and education. The testimony of the infant's mother and grandmother is that the father preferred not to have her adopted out, as the grandmother wanted, but asked that she be brought up by the grandmother in Augusta, Georgia, and promised to pay to the grandmother $60 per month plus other necessary expenses for this purpose. The grandmother's and the mother's testimony is that the father said that he would continue to make these payments until the infant plaintiff became twenty-one years old. Objections were overruled that these witnesses were incompetent under section 347 of the Civil Practice Act. The Trial Justice submitted to the jury whether such an agreement was, in fact, made and, if so, the jury were told to approximate what the recovery should be. They were instructed that $11,480 would be the aggregate of $60 a month for sixteen years from the father's death until plaintiff would be twenty-one. The charge stated: " Your verdict is to determine once and for all time what sum the plaintiff ever will receive on account of that promise. So consider all the evidence and weigh the chances of life and death according to the evidence and your experience with life and fix such sum as represents the present value of such sum as is a fair and just approximation of the total sum payable under the terms of Mr. Duncan's promise, and return a verdict for the plaintiff for that sum, if you have first found that the promise was in fact made." The jury rendered a verdict for $18,000.

Although the ultimate effect of such an agreement would be to lift from the mother the financial burden of the child's support, her testimony has been held to be admissible in *Connelly* v. *O'Connor* (117 N. Y. 91) for the reason that the "interest" which renders a witness incompetent under section 347 is only such as results from the "direct legal operation of the judgment" (*Hobart* v. *Hobart*, 62 N. Y. 80, 81, 83). The opinion in *Connelly* v. *O'Connor* (*supra*, p. 94) states: "We think the interest of the witness in the event of the action was, if any, 'remote, contingent and uncertain,' and was an interest in the question as distinguished from an interest in the event." That was spoken concerning the testimony of a witness similarly situated to the mother in this case. For this reason, although it should be explained to the jury that they may consider the effect of the outcome of the action upon the mother in relation to her credibility, we consider that her testimony was correctly admitted.

The grandmother was an incompetent witness inasmuch as the testimony is that she was the person with whom the decedent is claimed to have contracted and through whom the infant plaintiff derives her interest. It has been held that this result is not changed by the circumstance that the action is brought by the infant whose sole interest is derived from and through the promisee (*Rosseau* v. *Rouss,* 180 N. Y. 116). To this extent, the holding in *Rosseau* v. *Rouss* has been supported in *Matter of Browning* (280 N. Y. 584) and *Croker* v. *New York Trust Co.* (245 N. Y. 17). In *Matter of Browning* (*supra*), we held that the Surrogate properly excluded testimony of this nature concerning alleged agreements to support an infant, holding, in effect, that *Rosseau* v. *Rouss* (180 N. Y. 116, *supra*) was not implicitly overruled by *Ward* v. *New York Life Ins. Co.* (225 N. Y. 314), the latter case having been decided on the peculiar facts there presented. The grandmother is the person "from, through or under whom" the infant plaintiff "derives his interest or title by assignment or otherwise", as stated in section 347. Due to the admission of the grandmother's testimony concerning the making of this agreement, a new trial must be granted.

Inasmuch as no question has been raised concerning the measure of damage and the manner of payment thereof, we do

not pass upon it at this time (cf. *Kelly* v. *Security Mut. Life Ins. Co.,* 186 N. Y. 16; *Indian Riv. Islands Corp.* v. *Manufacturers Trust Co.,* 253 App. Div. 549; *Sulyok* v. *Penzintczeti Kozpont Budapest,* 279 App. Div. 528, 536, mod. upon another point, 304 N. Y. 704).

Defendants-appellants have pleaded that this alleged oral agreement is void under that portion of subdivision 1 of section 31 of the Personal Property Law which invalidates contracts that are not to be performed within one year. A promise to support a child during minority is not voided upon the ground that it is incapable of performance within a year, inasmuch as the object is support of the child as long as this is required during infancy. If the child were to die, the agreement would be fully performed, since the purpose is to furnish necessaries to the child, not to purchase services or to accomplish some other objective throughout a term of years. As is said in Corbin on Contracts (Vol. 2, § 446, pp. 548–549): '' The death of the child would attain the object of the contract in so far as it is possible of attainment.'' Consequently it has been held that the possibility of death of the infant within a year takes such a promise outside of the portion of the Statute of Frauds voiding contracts not to be performed within a year (*Kent* v. *Kent,* 62 N. Y. 560, 564; *McKinney* v. *McCloskey,* 8 Daly 368, affd. 76 N. Y. 594; *Burger* v. *Neumann,* 300 N. Y. 495; see *Blake* v. *Voigt,* 134 N. Y. 69).

This distinguishes a contract to maintain a child until he becomes of age from a contract of employment for a term of years, where the object is not to supply the wants of a minor while they exist but to obtain the services of the employee for a term of years. The latter type of contract and related agreements are held to fall within the Statute of Frauds (*Cohen* v. *Bartgis Bros. Co.,* 264 App. Div. 260, affd. 289 N. Y. 846; *Martocci* v. *Greater New York Brewery,* 301 N. Y. 57; *Wahl* v. *Barnum,* 116 N. Y. 87, 97; *Sack* v. *Beasley,* 282 App. Div. 153; *Shapiro* v. *Balaban,* 210 App. Div. 47; *McGirr* v. *Campbell,* 71 App. Div. 83; 2 Williston on Contracts [rev. ed.], § 496).

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

■■■■■■

BURKE, J. (dissenting).    The appellants rely on *Rosseau* v. *Rouss* (180 N. Y. 116) to support their objections to the admission of the testimony of the grandmother of Beryl Duncan, the infant plaintiff-respondent herein.   This court in the prevailing opinion in *Rosseau* v. *Rouss* (*supra*) clearly excluded the circumstances in this case from the ruling laid down therein, when it stated:   " There is a distinction between a contract by a putative father to pay a third person for the mere support of his natural child, which was the case in *Todd* v. *Weber* (95 N. Y. 181), and an agreement with the mother to settle a fortune upon her child which requires something more than a moral obligation to sustain it."   (Pp. 122–123.)

The facts in *Todd* v. *Weber* (95 N. Y. 181) are similar to the facts herein: the child remained at her grandmother's for nine or ten years and the grandmother provided the child with board, care and clothing, paid all expenses and sent her to school, paying the bills.   The testimony there was to the same effect as the testimony in this case.   The testator told both the mother and grandmother " ' that he wished ' them ' to take good care of the child and bring her up right, and he would see that it was all right ' ".   In *Todd* v. *Weber* (*supra*) the grandmother and the mother, as well as the plaintiff and other relatives, testified. This court has held in certain cases that a person from, through or under whom the plaintiff derived an interest was competent as a witness and that when a third person sues on a contract made for his benefit, he does not derive his interest from the party who furnished the consideration for the contract within the meaning of former section 829 of the Code of Civil Procedure (Civ. Prac. Act, now § 347) (*Healy* v. *Healy*, 55 App. Div. 315, affd. 166 N. Y. 624; *Bouton* v. *Welch*, 170 N. Y. 554).

A different doctrine was upheld in *Rosseau* v. *Rouss* (*supra*) but the prevailing opinion distinguished the earlier cases, and did not overrule them.   Subsequently this court followed the earlier cases in *Ward* v. *New York Life Ins. Co.* (225 N. Y. 314, 319) in refusing to exclude the evidence of the wife as to personal transactions between herself and her deceased husband for the purpose of establishing an assignment to her of an insurance policy.

The facts in the instant case are within the rule laid down in the earlier cases above cited and are specifically excluded by the *Rosseau* v. *Rouss* (*supra*) decision from its application.

In *Croker* v. *New York Trust Co.* (245 N. Y. 17, 24), this court reaffirmed the doctrine of *Rosseau* v. *Rouss* (*supra*) as a general rule indicating there may be exceptions. *Matter of Browning* (280 N. Y. 584) illustrates the wisdom of the court in making a distinction in *Rosseau* v. *Rouss* (*supra*) between a contract for the mere support of a natural child and an agreement to settle a fortune upon a child. In the *Browning* case (*supra*) the appellant sought a share in the intestate estate or damages in the sum of $1,000,000. The persons who furnished the consideration in the *Browning* case (*supra*) were either under a legal obligation to support the plaintiff or were interested as possible beneficiaries through inheritance from the plaintiff. This was likewise true in the *Rosseau* v. *Rouss* case (*supra*) but this is not so in this case, the grandmother not being liable for the support of the child. Indeed the mother, although legally liable for the support of the child, can testify. (*Connelly* v. *O'Connor,* 117 N. Y. 91.)

The *Browning, Rosseau* and *Croker* cases (*supra*) were alike in that the claims were not for mere support of a natural child, but involved the transfer of large sums of money, $100,000 to $1,000,000 from the estates of the decedents to the beneficiaries of the agreements and the persons who supplied the consideration were distributees of the beneficiaries of the agreement.

The present agreement is a contract by the putative father to pay a third person for the mere support of his natural child, the exact type of agreement approved by this court in *Todd* v. *Weber* (*supra*) cited and recognized as continuing authority in *Rosseau* v. *Rouss* (*supra*) and her testimony is admissible as an exception to the general rule cited in *Croker* v. *New York Trust Co.* (*supra*). Even though the grandmother supplied the consideration for the support agreement she is not presently legally liable for the support of the plaintiff. Her chances of inheriting any part of the fund from the plaintiff are, under the most favorable circumstances, remote. Therefore the plaintiff herein did not derive her interest from the party who furnished the consideration (the grandmother) within the meaning of section 347 of the Civil Practice Act.

Apart from the testimony of the grandmother, there is sufficient evidence in the record to establish the agreement and support the verdict of the jury. The testimony of the mother which has been held to be admissible is buttressed by the sober, responsible testimony of a doctor Hogans who was a companion of the decedent. The evidence given by the mother and the doctor as to the terms of the agreement was confirmed by the conduct of the decedent in making the payments for about four years prior to his death. Even if the testimony of the grandmother be deemed technically incompetent, the error, if any, was not so prejudicial to the appellants as to call for a reversal of the judgment. (*Hutton* v. *Smith*, 175 N. Y. 375; *Fulton* v. *Canno*, 200 App. Div. 253.) A new trial will serve no useful purpose but only contribute to the law's delay. There is ample competent evidence to sustain the findings made, and therefore, under section 106 of the Civil Practice Act, the error must be disregarded.

Accordingly, we dissent and vote to affirm.

CONWAY, Ch. J., DESMOND, FULD and FROESSEL, JJ., concur with VAN VOORHIS, J.; BURKE, J., dissents in an opinion in which DYE, J., concurs.

Judgments reversed, etc.