Millard L. Midonick, S.
In this intermediate accounting a trial was held with regard to claims made against the estate by decedent’s former spouse, Grace Isaacs, and his three children. The claims are predicated on the provisions of a separation agreement entered into by decedent and objectant Grace Isaacs in November, 1968 and upon a letter agreement executed in May, 1971.
Grace Isaacs contends that the estate is liable for arrears for alimony and child support in the amount of $3,331.32 which accrued prior to decedent’s death. She further maintains that the estate continues to be liable for alimony and child support payments subsequent to decedent’s death because of the decedent’s alleged failure to comply with a provision of the separation agreement concerning life insurance. Two of the decedent’s children, Jane and Mark Isaacs, have made claims against the estate for graduate education expenses and all three children, including Ellen, assert claims for further sums because of the decedent’s alleged failure to provide insurance for them in accordance with his agreements and because of his failure to make bequests of $5,000 to each of them in accordance with his letter agreement of 1971.
Article V (B) (4) of the November, 1968 separation agreement provides: "The Husband’s obligations to make the payments [for support of wife and children] provided for by this Article V shall cease upon his death, provided there is at such time in full force and effect the life insurance policies upon the life of the Husband provided for in Article VII hereof and the proceeds thereof shall be payable to the beneficiaries designated in said Article VII. The Husband’s estate, however, shall remain liable for any arrears in such payments as of the date of his death.”
Article VII of November, 1968 provides that: "The Husband’s life is presently insured, under certain life insurance policies having an aggregate face value payable on death in the sum of $100,000. The Husband shall designate the Wife as the beneficiary of $20,000 and the children of the parties as the beneficiaries, in equal shares of $30,000 of the proceeds of such of the aforesaid policies as the Husband may select until *956 all the aforesaid children shall have reached the age of 25 years or completed their education, whichever such event shall last occur. The Husband shall keep such of the aforesaid policies as may be necessary to fulfill the Husband’s obligations under this Article VII in full force and effect, shall pay all premiums, dues and assessments thereon and shall, upon the wife’s request, furnish to the Wife appropriate evidence that said policies are in full force and effect.”
Subsequent to the execution of this 1968 agreement, oh May 25, 1971, decedent and objectant Grace Isaacs signed an instrument which reads as follows:
’’Mrs Grace Isaacs [mother of decedent’s children and former wife of decedent, and objectant]
57 Nancy Blvd.
Merrick, N. Y.
Dear Grace,
This will confirm our discussions today as follows:
Notwithstanding anything to the contrary contained in the Separation Agreement between us:—
1. I will provide for the completion of Mark’s present medical school education.
2. I will provide for such reasonable graduate work as Jane may elect to pursue.
3. I will maintain the existing $50,000 in life insurance presently existing for the three children in equitable proportions dependent on their needs for completion of their education.
4. I will provide in my last Will and Testament for a bequest for each of the children of no less than $5000 each.
Sincerely,
(signed) Jacob L. Isaacs [decedent]
(signed) Grace F. Isaacs”
This instrument was inscribed entirely in the handwriting of the decedent, except for the signature of the former wife. The identification of handwriting and signature of the decedent and of the former wife’s signature was made by decedent’s former law partner.
All testimony by Grace Isaacs as to the negotiation and execution of this instrument dated May 25, 1971 is stricken upon objection of the estate fiduciary under the exclusionary *957 rule of the Dead Man’s Statute (CPLR 4519; Rosseau v Rouss, 180 NY 116). Where a contract is made for the benefit of a third party, who furnishes no consideration therefor, the third party is deemed to derive his interest in the contract from the promisee, and the promisee is incompetent to testify to transactions with the deceased promisor to prove the agreement. (Duncan v Clarke, 308 NY 282; Matter of Browning, 165 Misc 675, affd 255 App Div 764, affd 280 ,NY 584.) This is so even where a promise might be said to run directly to the third-party beneficiary (Rosseau v Rouss, supra.)
In Duncan v Clarke (supra) it was decided that a mother was not incompetent to testify to establish an oral agreement between the decedent father and the child’s grandmother wherein the decedent agreed to support their child by paying a weekly sum to the grandmother. While the ultimate effect of that agreement would lift from the mother the burden of the child’s support, the court held that that interest was " 'remote, contingent and uncertain’ ” and was an interest in the question as distinguished from an interest in the event! (Duncan v Clarke, supra, p 285). This appears to be a distinction without a difference. The Court of Appeals went on, however, to rule that the grandmother was an incompetent witness since she was the person with whom decedent contracted and through whom the infant derived her interest. This was so held even though the infant brought the action. In the instant case the mother of the children was a contracting party, like the grandmother in Duncan, and is accordingly incompetent to testify as to the execution of the agreement. It is noted that had decedent’s former law partner not testified, the contracting former wife would have been placed in the difficult position of introducing this writing in evidence because of CPLR 4519.
This Dead Man’s Statute is surely in need of revision by the Legislature. Most exclusionary rules of evidence, because of rigidity, impair the search for truth. The fear that interested parties may deviate from the truth should generally be viewed as affecting the weight, rather than the admissibility, of evidence. Some features of the Dead Man’s Statute should perhaps be retained by the Legislature to avoid groundless litigation over fraudulent claims. Successful fraudulent claims are few; unnecessary litigation abounds with or without, indeed about the application of, the Dead Man’s Statute. As stated by the Court of Appeals in 1972, the "Weinstein-Korn *958 Miller treatise * * * comments [that it] 'is somewhat shocking’ * * * 'because * * * 'the policy of the Dead Man’s Statute * * * deliberately impedes the courts’ search for the truth on the ground that judges and jurors are not capable of properly assessing credibility’ (Phillips v Kantor & Co., 31 NY2d 307, 313; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.06, p 45-465; see 10 Cox-Arenson-Medina, NY Civ Prac, par 505.01 [b] [2].)
[Additional material with respect to construction of and awards under the separation agreement have been omitted.]