**Constance WAGNER, Plaintiff,**

v.

**Sheila TUCKER, As Administratrix of the Estate of James Rooney, Esq., Defendant.**

**No. 77 Civ. 5474 (JEL).**

United States District Court, S. D. New York.

July 14, 1981.

Bartels, Pykett & Aronwald, White Plains, N. Y., for defendant; John R. Bartels, Jr., White Plains, N. Y., of counsel.

Raskin & Rappoport, P. C., New York City, for plaintiff; Perry Fish, New York City, of counsel.

* Sitting by designation.

LUMBARD, Circuit Judge: *

Plaintiff Constance Wagner (now Mrs. Constance Wooley), a citizen of New York State, brought this diversity action against Sheila M. Tucker, as Administratrix of the Estate of James R. Rooney. Defendant is a citizen of Connecticut. Mrs. Wooley alleged that Mr. Rooney, an attorney, had negligently failed to institute a personal injury action on her behalf within the permissible statutory period, thereby depriving her of the damages she would have recovered in such an action. After a one-day trial to the court, sitting without a jury, the court held from the bench that Mrs. Wooley had established defendant's liability. At a second one-day trial, the parties presented evidence on the issue of damages. The court now directs that judgment be entered in plaintiff's favor in the amount of $25,000.

The present action arose out of an automobile collision which occurred on the night of December 8, 1972 on the Montauk Highway in Southampton, Long Island. Plaintiff, 19 years old at the time, was riding in the front seat of a car driven by Carlos Rivero, though owned by Jose Rivero, which collided with a car driven by Gary Mark Kutak and owned by Robert Kutak. According to plaintiff, before the collision Carlos Rivero had been driving at excessive speeds and was swerving into the lane for oncoming traffic. He had refused to drive any slower, despite plaintiff's request that he do so. He also refused to stop the car and let her out.

After the accident, plaintiff was taken to Southampton Hospital where she was treated in the emergency room. Her parents were notified of the accident, and her father then drove her from Southampton to the Yonkers Professional Hospital. She remained there for three or four days and received further medical care.

█ Defendant did not dispute any of the foregoing facts concerning the accident at trial. Nor was there any question that

no action was ever brought on plaintiff's behalf for injuries sustained as a result of the automobile accident. Instead, the only issue at trial concerned whether plaintiff, who was a minor at the time of the accident, had through her father enlisted the professional services of James Rooney, an attorney admitted to practice in the State of New York whose offices were in New Rochelle, New York. Since Mr. Rooney passed away on July 6, 1977, the effect of New York's so-called Dead Man's Statute, CPLR § 4519, applicable in this diversity suit by virtue of Federal Rule of Evidence 601, was called into question.

CPLR § 4519 states:

a party or person interested in the event, or a person from, through or under whom such a party or interested person derives his interest ... shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person ... concerning a personal transaction or communication between the witness and the deceased person....

Because of the rule, plaintiff was clearly incompetent to testify in order to establish that an attorney-client relationship had been created with Mr. Rooney. Moreover, her father, William Wagner, was also incompetent since he had (due to his daughter's age) allegedly entered the contract with Mr. Rooney for his services on behalf of the plaintiff in the present suit. Because plaintiff would be the third-party beneficiary of a contract between her father and Mr. Rooney, her father was a "person from, through or under whom ... a party ... derives his interest." *See, e. g., Duncan v. Clarke*, 308 N.Y. 282, 125 N.E.2d 569 (1955); *Matter of Issacs*, 86 Misc.2d 954, 383 N.Y. S.2d 976 (Surr.Ct.1976); *Tepper v. Tannenbaum*, 87 Misc.2d 829, 386 N.Y.S.2d 936, 939 (Sup.Ct.N.Y.Co.1976), *rev'd on other grounds*, 65 A.D.2d 359, 411 N.Y.S.2d 588 (1978).

However, plaintiff's mother would be allowed to testify if she merely witnessed, but did not enter into the contract between her husband and Mr. Rooney. She would not be a person "from, through or under" plaintiff claimed. Nor would she be disqualified under the statute as a party "interested in the event," as New York cases have held that the mother of a party is considered to have a legal interest in the recovery too remote to come within the prohibition of the statute. *See, e. g., Duncan v. Clarke, supra. See also Curtis v. Hennequin*, 27 Misc.2d 1042, 212 N.Y.S.2d 796 (Sup.Ct. Nassau Co. 1961).

Accordingly, the court permitted Mrs. Wagner to testify concerning her husband's and daughter's dealings with Mr. Rooney. She testified that she and her husband had visited Mr. Rooney at his office shortly after the plaintiff's accident. Her husband asked Mr. Rooney if he would represent plaintiff in regard to the accident, and Mr. Rooney replied that he would. She observed her husband signing an agreement with Mr. Rooney and permission forms authorizing Rooney to obtain necessary medical records. Mrs. Wagner did not sign any of these documents.

Mrs. Wagner also testified that she spoke to Mr. Rooney many times in the subsequent months. She would ask him how the case was proceeding. After Rooney's death she was told by his former law associate that there was no record of Rooney's having accepted the matter. Her testimony thus established her competence and was admitted as evidence of the retention of Rooney.

Also admitted into evidence was a copy of a letter from Rooney to William Wagner, plaintiff's father, dated January 31, 1974. The first part of the letter recited bills received and sent to an insurance company in regard to an earlier accident involving the plaintiff which had occurred in 1971. It also asked for any additional bills relating to the accident. The second portion involved the 1972 accident, referred to as the "Montauk Highway accident," and also listed the medical bills Rooney had received and also asked for any additional related bills which plaintiff or her father may have received. The postscript to the letter stated that a complaint in the lawsuit concerning the 1971 accident was attached.

There was also admitted into evidence a check from the Empire Mutual Insurance Company mailed to Rooney which concerned the 1972 accident. The check, in the amount of $1,085.75 was made out to William and Irene Wagner, individually and as parents and guardians of Constance Wagner, and James Rooney as attorney. The check lists the insured as Joseph Rivero. The check was endorsed by "James Rooney as attorney."

Based upon this evidence, and other competent testimony by plaintiff and her father, the court concluded that Rooney had agreed to represent plaintiff concerning the 1972 accident. Thus, an attorney-client relationship had been established. No evidence was introduced by the defense.

The court therefore concluded that Rooney had been retained as plaintiff's attorney in regard to the 1972 accident, that Rooney had failed to institute an action based upon the accident, and that plaintiff had a valid cause of action arising out of that accident on which she could have recovered her resulting damages. Therefore, the court ruled from the bench that the defendant's liability had been established. See, e. g., Carpenter v. Weichert, 51 A.D.2d 817, 379 N.Y.S.2d 191 (1976); Reynolds v. Picciano, 29 A.D.2d 1012, 289 N.Y.S.2d 436 (1968); Gladden v. Logan, 28 A.D.2d 1116, 284 N.Y.S.2d 920 (1967).

Thereafter the court received evidence to determine the loss to the plaintiff by reason of Rooney's failure to bring a personal injury action within the statutory period. Dr. Benito Rish, a cosmetic plastic surgeon who treated plaintiff for her injuries from both the 1971 and 1972 accidents, testified to the services he performed with respect to the injuries resulting from the 1972 accident. Plaintiff was admitted to Yonkers Professional Hospital with multiple lacerations of her face and forehead. She underwent treatment to remove dead tissue and glass and to improve the appearance of the scars which remained. Although plaintiff was released shortly thereafter, Dr. Rish stated that further surgery would have been beneficial, and he recommended that such surgery be performed, and testified that such surgery, along with the necessary hospitalization, would cost between $1,700.00 and $1,800.00. He stated, however, that the scars would never completely disappear. He testified finally to his fee of $600.00 for treatment of the plaintiff.

Plaintiff once again recounted the events surrounding the accident and gave her own version of her medical treatment. She testified that she was extremely anxious about her appearance at the time and in the future, particularly in regard to the scars. She stated that her family was unable to afford the second operation suggested by Dr. Rish. She also testified that for years after the accident she was unable to get into a car without great fear, and although this fear existed somewhat prior to the 1972 accident as a result of the 1971 accident, it increased after the later accident. Recently, however, the fear was lessening and she had finally obtained her own driver's license.

Plaintiff's father testified also as to the events on the night of the accident and his subsequent efforts in transporting plaintiff to Yonkers. He bore certain out-of-pocket expenses as to transportation and bandages. He also testified as to plaintiff's fear at the time about her scars and her fear of driving. He testified as well as to various medical bills he had paid on his daughter's behalf: in addition to Dr. Rish's bill, these included a bill from a neurologist for $100.00, a bill from Yonkers Professional Hospital for $381.05, and an x-ray bill of $30.00. Mr. Wagner acknowledged that, to aid in paying these bills, there had been received a check from the Empire Mutual Insurance Company in the amount of $1,085.75.

Finally, defendant put on the stand Dr. Bennett Derby, a neurologist and neuropathologist who had examined the plaintiff shortly before trial. He testified that at the time of his examination plaintiff displayed little evidence of anxiety. She was, however, somewhat anxious about driving and being driven in an automobile although this anxiety was improving and was on the

road to resolution. Finally, he testified that the remaining scars were minute but that plaintiff was still anxious about them, a response he believed was an "overreaction."

Plaintiff was recalled by her attorney to testify as to the extent of the scars at the time of the accident. She also showed her present scars to the court.

The court now finds, based upon all the evidence, that plaintiff is entitled to a judgment in the amount of $25,000. This amount includes undisputed medical bills of $381.05 from Yonkers Professional Hospital (no bill was admitted into evidence from Southampton Hospital), $700.00 from attending physicians, and $30.00 from the Radiology Group. Added to these amounts is a reasonable amount for the cost of a subsequent operation which plaintiff has been unable to afford. Based upon Dr. Rish's testimony, the court finds that plaintiff should be awarded $1,750.00 for this item of damages. The court also finds that a total of $50.00 should be awarded for miscellaneous costs of transportation and bandages on the night of the accident.

From the resulting total of $2,911.05, the court subtracts the $1,085.75 paid by Rivero's insurance company to Rooney, which was applied to plaintiff's medical bills listed above. Plaintiff is not entitled to this amount since it would not have been awardable in a suit against Rivero, and plaintiff cannot claim to have been damaged by Rooney's negligence in this amount.

Finally, the court adds to the total a reasonable amount for the pain and suffering which plaintiff underwent first, as an immediate result of the accident itself, second, as to the fear and concern as to her physical appearance, and finally as to anxiety over driving and being driven in an automobile. As to the second amount, the court does not give much weight to defendant's expert's testimony that plaintiff's fear was exaggerated, since plaintiff's fear was real nonetheless. As to the final amount, the court takes note of the facts that the fear of automobiles must be traced in part to the 1971 accident and that the fear was subsiding by the time of the trial.

Having thus reached a total of $25,000, the court faces an additional problem. Since the plaintiff's damages represent the amount which she has suffered due to Rooney's negligence in failing to institute suit within the proper period, the court is concerned by the lack of evidence as to whether, if Rooney had brought suit and recovered a judgment for $25,000 the amount could have been collected from the defendants in the underlying personal injury action. There is language in the New York cases suggesting that the plaintiff in an attorney malpractice action has the burden of proving the collectability of any judgment which might have been obtained in the underlying action, see, e. g., Schmitt v. McMillan, 175 A.D. 799, 162 N.Y.S. 437 (1916); Titsworth v. Mondo, 95 Misc.2d 233, 407 N.Y.S.2d 793 (Sup.Ct.N.Y.Co.1978). Surprisingly, none of the cases confronts the issue directly, and none has denied recovery in cases such as the one here where no objection concerning collectability was raised by defendant. The cases generally hold only that the plaintiff must prove a valid cause of action in the underlying suit. See, e. g., Garguilo v. Schunk, 58 A.D.2d 683, 395 N.Y.S.2d 751 (1977); Carpenter v. Weichert, 51 A.D.2d 817, 379 N.Y.S.2d 191 (1976).

▮ It is thus reasonable to conclude that while a New York court might place the burden of proof upon the plaintiff to demonstrate the collectability of any judgment received in the underlying action, it will also place a burden of going forward on the defendant such that, if the issue is not raised by the defendant, no proof of collectability is required of the plaintiff. In any event, in this case, the court can take judicial notice of the fact that New York requires minimum insurance by the owner of an automobile in the amount of $10,000 for an accident in which one person is injured, N.Y. Vehicle & Traffic Law § 345 (McKinney's 1970), and that almost all owners carry substantially greater amounts. The court also takes note that New York law allows for docketing of any judgment re-

covered for ten years, with an additional ten year extension permitted. N.Y. CPLR § 5014 (McKinney's 1963). In view of these facts, the court concludes that the $25,000 amount awarded here could have been collected in the underlying action.

The total amount of damages sustained by the plaintiff was therefore $25,000. Judgment in this amount will be entered for the plaintiff.

The foregoing constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.