**Michelle ROSENFELD,**
**Plaintiff–Appellee,**

v.

**Gerard BASQUIAT, as Administrator of**
**the Estate of Jean–Michel Basquiat,**
**Defendant–Appellant.**

No. 312, Docket 95–7329.

United States Court of Appeals,
Second Circuit.

Argued Oct. 13, 1995.

Decided March 13, 1996.

Robert W. Cinque, New York City (James P. Cinque, Cinque & Cinque, of counsel), for Defendant–Appellant.

Michael K. O'Donnell, New York City (Blumenthal & Lynne, of counsel), for Plaintiff–Appellee.

Before NEWMAN, Chief Judge, and CARDAMONE and CABRANES, Circuit Judges.

CARDAMONE, Circuit Judge:

Artist Jean–Michel Basquiat's short-lived career left a lasting impression on the art world. A so-called neo-expressionist, he was remarkable in his precocious talent, his prolificacy, and his eccentricity. His rapid rise to fame and premature death at age 27 left a number of mysteries. One of them, which is the subject of this appeal, is whether Basquiat contracted to sell three of his paintings to Michelle Rosenfeld, an art dealer and plaintiff in the instant action. These artworks that Rosenfeld alleges she contracted to buy were entitled "Separation of the 'K'" (a diptych), "Atlas," and "Untitled Head." Their whereabouts—if indeed they still actually exist—are unknown. On November 20, 1989 Rosenfeld sued Gerard Basquiat, as administrator of the estate of his son Jean–Michel, for damages or specific performance of the contract.

## BACKGROUND

This diversity action, brought in the United States District Court for the Southern District of New York and governed by New York law, was tried before a jury in October 1993. When the jury was unable to agree, a mistrial was declared. At the trial the artist's estate sought initially to prevent the plaintiff purchaser from testifying with respect to two meetings she allegedly had with Basquiat, on the grounds that such evidence was barred by the New York Dead Man's Statute, N.Y. CPLR 4519 (McKinney 1992). Later in the trial the estate acquiesced to the receipt of plaintiff's testimony rather than have the trial judge deliver what it believed was an extremely prejudicial jury charge on the New York statute.

As a result, Rosenfeld testified. She stated she went to Basquiat's apartment on October 25, 1982, and while she was there he agreed to sell her three paintings for $4,000 each, and that she picked out the three works identified in her complaint. She testified further that Basquiat asked for a cash deposit of ten percent; she left his loft and later returned with $1,000 in cash, which she paid him. When she asked for a receipt, he insisted on drawing up a "contract," and got down on the floor and wrote it out in crayon on a large piece of paper, remarking that "some day this contract will be worth money." She identified a handwritten document listing the three paintings, bearing her signature and that of Basquiat, which stated: "$12,000—$1000 DEPOSIT—OCT 25 82."

Rosenfeld also testified that she later returned to Basquiat's loft to discuss delivery, but Basquiat convinced her to wait for at least two years so that he could show the paintings at exhibitions.

Plaintiff's evidence presented at this first trial included the testimony of Rosenfeld's driver, Ron Belfrom, who corroborated plaintiff's story by stating he had been present and participated in the October 25, 1982 meeting between Rosenfeld and Basquiat. A forensic document examiner, Paul Osborn, opined that the handwritten "contract" was in Basquiat's hand. Although plaintiff maintained that at one time she had photographs of the paintings, she was unable to produce them at trial, and introduced reconstructions of the works instead. To rebut plaintiff's evidence, defendant relied primarily on cross-examination and attempted to show that the alleged contract was a fraud.

When the jury reported it was deadlocked, a mistrial was declared. The case was then reassigned to Judge Baer for a new trial. At a pretrial conference held on September 20, 1994 the trial court instructed the parties to brief the question of the applicability of the Dead Man's Statute so that it could be resolved before trial began. When plaintiff contended that she could testify at the second trial concerning her personal transactions with Basquiat, Judge Baer ruled, *in limine*, that the Dead Man's Statute applied despite the fact that the estate had waived its protection at the first trial. The trial court reasoned further that the estate's raising of the Dead Man's Statute, in addition to warranting a jury instruction, made Rosenfeld "unavailable as a witness" under the Federal Rules of Evidence. *See* Fed.R.Evid. 804(a)(1). Hence, it concluded Rosenfeld's testimony from the first trial qualified for the hearsay exception set forth in Rule 804(b) and could be read to the jury, although the Dead Man's Statute precluded live testimony regarding personal transactions with Basquiat.

The evidence offered at the second trial was substantially the same as that offered at the first trial, except that the estate called its own handwriting expert and an art gallery manager who had been responsible for keeping an inventory of Basquiat's works for the estate. When Rosenfeld was called, however, her counsel carefully avoided asking about anything that occurred between her and the artist. She testified she went to Basquiat's loft in October 1982 and "picked out" the three paintings. She also indicated she returned to the loft ten days later, but did not pick up the paintings. After Rosenfeld was excused, the trial court allowed portions of her former testimony to be read to the jury. The portions read into evidence dealt primarily with the personal transactions allegedly occurring between Rosenfeld and Basquiat on October 25, 1982 and those occurring ten days later when she returned to his loft. Counsel for the estate did not object when plaintiff's counsel asked to have the testimony read into evidence.

The jury in the second trial reached a verdict in favor of Rosenfeld, returning answers to special interrogatories as follows: Basquiat entered into a written agreement in October 1982 to sell the three paintings to Rosenfeld for $12,000; although there was no initial agreement establishing a delivery date, they made a separate oral agreement approximately ten days later setting the delivery date; a reasonable delivery date was October 1987; Rosenfeld first learned of the breach in August 1988, when Jean–Michel Basquiat died; and the market price of the three works at that time was $395,000.

Following defendant's post-trial motion for judgment as a matter of law, the district court ruled that the contract did not violate the Statute of Frauds and that there was sufficient proof of damages to support the verdict. It subsequently entered a judgment in favor of Rosenfeld in the amount of $384,-000, representing the current market value of the artworks, discounted by the outstanding portion of the purchase price. In addition, interest in the amount of $217,301.92 was awarded to plaintiff in the judgment.

On appeal, the estate argues it was error for the trial court to admit Rosenfeld's testimony into evidence and that the alleged contract between plaintiff and Basquiat violated the Statute of Frauds. We conclude that what has already been once repeated must

now be repeated again. Accordingly, we reverse and remand for a new trial.

## DISCUSSION

### I Rosenfeld's Testimony and the Dead Man's Statute

Although the Federal Rules of Evidence abolished many common-law rules governing witness competency, they expressly provide that state law determines what rules will apply in civil actions governed by state law. *See* Fed.R.Evid. 601. Because state law supplies the rules in diversity-of-citizenship cases, *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938), New York law, including its statute barring the testimony of certain interested witnesses, must be given effect. *See* H.R.Rep. No. 650, 93d Cong., 1st Sess. 9 (1973) (House Report) (noting that Rule 601 was amended to require the application of state competency rules to avoid "rendering inapplicable in the federal courts the so-called Dead Man's Statutes").

New York's Dead Man's Statute states in relevant part

Upon the trial of an action ..., a party or a person interested in the event ... shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person ..., concerning a personal transaction or communication between the witness and the deceased person ..., except where the executor, administrator, [or] survivor ... is examined in his own behalf, or the testimony of the ... deceased person is given in evidence, concerning the same transaction or communication.

N.Y. CPLR 4519 (McKinney 1992).

This rule, which is widely criticized as a remnant of the common-law rule making interested persons incompetent to testify, still is the law in New York. Although it has been suggested that the time to bury the Dead Man's Statute has been too long deferred, *see, e.g., In re Estate of Dunbar*, 139 Misc.2d 955, 956, 529 N.Y.S.2d 452 (Sur.Ct.1988) (burial of the Dead Man's Statute is long overdue, at least where estate seeks affirmative relief), it is still alive and well. As New York's highest court explained, "While the utility and wisdom of the [Dead Man's Statute] have been often questioned throughout its history ... and the legislature has often forcefully been urged to change or to modify the statute, ... it, nonetheless, has been consistently reenacted by the Legislature and remains a part of the law of this State." *In re Estate of Wood*, 52 N.Y.2d 139, 144, 436 N.Y.S.2d 850, 418 N.E.2d 365 (1981).

We must therefore consider how the statute works. If a witness is interested and her testimony involves a personal transaction with the decedent, her testimony with regard to that transaction is inadmissible, unless the estate has waived the bar of the statute. *See Wood*, 52 N.Y.2d at 144–45, 436 N.Y.S.2d 850, 418 N.E.2d 365. Because she is the plaintiff in this action, Rosenfeld is interested. *See Duncan v. Clarke*, 308 N.Y. 282, 285, 125 N.E.2d 569 (1955) ("[T]he 'interest' which renders a witness incompetent under [the statute] is only such as results from the 'direct legal operation of the judgment.'") (quoting *Hobart v. Hobart*, 62 N.Y. 80, 83 (1875)).

Moreover, plaintiff's testimony concerning her two alleged meetings with Basquiat, including the meeting where the contract document was created, were "personal transaction[s] or communication[s]" between herself and Basquiat. *See Griswold v. Hart*, 205 N.Y. 384, 395, 98 N.E. 918 (1912) ("[T]he statute ... excludes the testimony of an interested witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased."). Although plaintiff concedes the statute applies, she nonetheless insists that the introduction of her former testimony was not reversible error, for three different reasons—(A) the hearsay exception in Rule 804, (B) waiver, and (C) harmless error. We examine these three propositions in the discussion that follows.

### A. *Rule 804*

Plaintiff's first argument is based on the hearsay exception in Fed.R.Evid. 804.

That section permits certain testimony, which would ordinarily be excluded by the hearsay rule, to be received at trial. However, the hearsay exception in Rule 804 gives no license to bypass the New York statute barring Rosenfeld's testimony. The hearsay rule itself, Rule 802, is a rule of exclusion that makes an out-of-court statement generally inadmissible when the statement is offered to prove the truth of its contents. Rule 804 establishes a number of exceptions to that rule of exclusion when the person upon whose behalf the testimony or statement is offered is "unavailable as a witness." Fed. R.Evid. 804(b) ("The following *are not excluded by the hearsay rule ....*") (emphasis added).

■ Plaintiff asserts that Rosenfeld became "unavailable" within the meaning of Rule 804 because the Dead Man's Statute amounted to a "privilege." *See* Fed.R.Evid. 804(a)(1) (" 'Unavailability as a witness' includes situations in which the declarant ... is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement...."). New York's Dead Man's Statute is a rule of witness competency, not a rule of privilege. Even if we were to view Rosenfeld as "unavailable" under the inclusive language of Rule 804(a)(1), however, plaintiff's argument would fail. Plaintiff misapprehends the structure of the Federal Rules of Evidence by making Rule 804 an independent basis for the admissibility of evidence otherwise excluded by the Dead Man's Statute. Although both parties vigorously discuss its applicability, we think Rule 804 not relevant in the context of the present case. Under CPLR 4519, the defense was barred from introducing Rosenfeld's testimony, live or otherwise, concerning her transaction with the decedent. The fact that Rosenfeld had previously testified under oath regarding her meetings with Jean–Michel Basquiat may bring her prior testimony within an exception to the hearsay rule. It does not, however, resolve the matter of the admissibility of the prior testimony under CPLR 4519. *See Phillips v. Joseph Kantor & Co.,* 31 N.Y.2d 307, 315, 338 N.Y.S.2d 882, 291 N.E.2d 129 (1972) (indicating that Dead Man's Statute would render interested par-

ty's deposition testimony inadmissible at trial). Rule 804(b)(1) merely makes clear that the hearsay rule does not operate as a bar to the admissibility of relevant prior testimony of a *competent* witness who is unavailable. Where Rule 4519 renders a witness incompetent (and the witness's testimony inadmissible), the fact that the testimony would fall within an exception to the hearsay rule is simply irrelevant.

The language of New York's statutory hearsay exception for former testimony helps explain why Rosenfeld's testimony was not admissible. The statute specifically permits the introduction of "testimony ... introduced in evidence at a former trial" where a "witness' testimony is not available because ... he is incompetent to testify by virtue of section 4519." N.Y. CPLR 4517 (McKinney's 1992). As in the Federal Rules of Evidence, the unavailability exception to the hearsay rule is not itself an affirmative ground for admissibility: such testimony remains "subject to any objection to admissibility other than hearsay." *Id.* Evidence within the scope of CPLR 4517 may therefore nevertheless be rendered inadmissible by the Dead Man's Statute.

Plaintiff avers further that *Courtland v. Walston & Co.,* 340 F.Supp. 1076 (S.D.N.Y. 1972), as well as "equity and logic," support the admissibility of Rosenfeld's testimony. *Courtland* held that the New York statute does not bar testimony where the cause of action being prosecuted in federal court arises under *federal* law. *See* 340 F.Supp. at 1089–90. Any suggestion that the statute does not apply in diversity cases was rejected by Congress when it amended Rule 601 to make state competency rules applicable to claims governed by state law. *See* House Report at 9 ("Acknowledging that there is substantial disagreement as to the merit of Dead Man's Statutes, the [Judiciary] Committee nevertheless believed that where such statutes have been enacted they represent State policy which should not be overturned in the absence of a compelling federal interest."). Similarly, plaintiff's reliance on the pre–1975 version of Rule 43(a) of the Federal Rules of Civil Procedure is wholly without merit. Although Rule 43(a) at one time gov-

erned witness competency, federal courts now apply the Federal Rules of Evidence. *See* Fed.R.Civ.P. 43(a); Fed.R.Evid. 601.

Given such a clear directive from Congress, it is not within our province to question the continued applicability of the New York statute. Despite the chorus of those who think CPLR 4519 should be repealed on the grounds of fairness or to enhance fact-finding, the mandates of the state legislature express that state's policy and may not be ignored by a federal court, absent a constitutional infirmity.

## B. *Waiver*

### 1. *Failure to Object to Ruling*

■ Plaintiff next contends the estate waived the protection of the statute by failing to object. This assertion fails to take into account the district court's *in limine* ruling that Rosenfeld's testimony from the first trial was admissible in the second trial pursuant to Rule 804, despite the applicability of the statute. In opposition to plaintiff's motion that her testimony from the first trial be admitted at the second one, the estate had urged that using plaintiff's former testimony constitutes an obvious "end run" around the bar of the Dead Man's Statute. Because the district court at the outset made a definitive ruling contrary to the estate's argument on the admissibility of Rosenfeld's former testimony, there was no need for the estate to challenge admissibility again during the trial when plaintiff asked to introduce the testimony.

Although a litigant may not complain of error in the absence of a timely objection, *see* Fed.R.Evid. 103(a)(1), no formal exception is required. Fed.R.Civ.P. 46. When a trial court has ruled on a motion made *in limine,* there must, in some circumstances, be another evidentiary ruling during the trial to preserve the matter for appeal. Claims that relevant evidence is unduly prejudicial fall into this category—they must be resolved in the developed context of the trial. *See United States v. Birbal,* 62 F.3d 456, 464–65 (2d Cir.1995) (contention that Rule 403 required the exclusion of prejudicial testimony); *cf. Luce v. United States,* 469 U.S. 38, 43, 105

S.Ct. 460, 464, 83 L.Ed.2d 443 (1984) ("[T]o raise and preserve for review the claim of improper impeachment [under Fed.R.Evid. 609(a) ] with a prior conviction, a defendant must testify."); *United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.) (per curiam) (applying *Luce* rule to *in limine* ruling regarding impeachment under Fed.R.Evid. 608(b)), *cert. denied,* 479 U.S. 831, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986).

Other types of evidentiary rulings made *in limine* may nonetheless be appealed despite the lack of a subsequent objection at trial. *See United States v. Yu–Leung,* 51 F.3d 1116, 1121 (2d Cir.1995). Evidentiary issues not contextually bound, courts have held, may be preserved by a motion *in limine* when the issue is one that (1) is fairly presented to the trial court, (2) may finally be decided before trial, and (3) is the subject of a definite ruling by the trial judge. *See id.* (citing *United States v. Mejia–Alarcon,* 995 F.2d 982, 986 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993)).

Not all the Circuits agree with this view. *Compare American Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 324–25 (3d Cir.1985) *and Thronson v. Meisels,* 800 F.2d 136, 142 (7th Cir.1986) (Rule 103(a) satisfied "[b]y seeking, albeit unsuccessfully, to exclude the evidence by filing a motion *in limine.*") *and Palmerin v. City of Riverside,* 794 F.2d 1409, 1413 (9th Cir.1986) ("[W]here the substance of the objection has been thoroughly explored during the hearing on the motion *in limine,* and the trial court's ruling permitting the introduction of evidence was explicit and definitive, no further action is required to preserve for appeal the issue of admissibility ....") *with Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir. 1980) (because "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial [and] the trial court may not pay close attention to each one, ... a party whose motion in limine has been overruled must object when the error he sought to prevent ... is about to occur at trial.") *and Hale v. Firestone Tire & Rubber*

*Co.,* 756 F.2d 1322, 1333 (8th Cir.1985) (applying same rule).

The Advisory Committee on Evidence Rules has recognized the uncertainty created by the varying positions adopted in different Circuits and has proposed amending Rule 103 to require timely renewal of pretrial objections and proffers of evidence "unless the court states on the record, or the context clearly demonstrates, that a ruling on the objection or proffer is final." Proposed Fed. R.Evid. 103(e) (memo dated June 7, 1995), *reprinted in* 116 S.Ct. CLXXXII (1995). The new rule would require counsel to obtain the required ruling or "bear the risk of waiving an appealable issue." *Id.* at CLXXXIII (committee note).

The district court's pre-trial ruling on admissibility of Rosenfeld's testimony under the Dead Man's Statute, unlike the ruling in *Yu–Leung,* was explicit and definitive. *See Palmerin,* 794 F.2d at 1412–13. It was set forth in a written opinion and order and left no room for reconsideration, nor did any new circumstances arise that would have changed its resolution. Further, the issue addressed by the district court—whether former testimony was admissible under Rule 804 notwithstanding the Dead Man's Statute—was essentially a legal one. "[S]ome evidentiary issues are akin to questions of law, and the decision to admit such evidence is not dependent upon the character of the other evidence admitted at trial." *Mejia–Alarcon,* 995 F.2d at 987. Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later objection.

Moreover, the district court had a fair opportunity to rule on admissibility when plaintiff made her pretrial motion. In addition, because the estate advanced several arguments in its opposition to the motion, it is irrelevant that the plaintiff, rather than the estate, was the movant. Following plaintiff's motion, the estate stood in the same position as a party moving to exclude the evidence. In sum, an objection by the estate at trial would have been no more than taking a formal exception, which Rule 46 states is not required. *See American Home Assur-*

*ance,* 753 F.2d at 324–25. The district court's *in limine* ruling may therefore properly be appealed.

### 2. *Did Cross–Examination of Plaintiff "Open the Door"?*

■ Plaintiff maintains, however, that the estate "opened the door" by cross-examining plaintiff's witnesses about the transactions between Rosenfeld and Basquiat, and by examining the estate administrator, Gerard Basquiat. As a consequence, plaintiff declares, the estate is attempting to use the Dead Man's Statute offensively and does not deserve its protection. We reject this argument because the estate was entitled to give such evidence in the face of an erroneous evidentiary ruling allowing Rosenfeld's former testimony to be read to the jury. Although CPLR 4519 does not bar an interested party from testifying where the estate opens the door by introducing evidence regarding the relevant transaction, *Wood,* 52 N.Y.2d at 145, 436 N.Y.S.2d 850, 418 N.E.2d 365; *Nay v. Curley,* 113 N.Y. 575, 578–79, 21 N.E. 698 (1889), or by questioning its adversary with respect to the transaction, *Wood,* 52 N.Y.2d at 145, 436 N.Y.S.2d 850, 418 N.E.2d 365; *Cole v. Sweet,* 187 N.Y. 488, 491, 80 N.E. 355 (1907), no door was opened in the instant case.

■ When the trial court has made an erroneous ruling as to the admissibility of the testimony of an interested witness, the estate is entitled to test the credibility of the witnesses regarding the transaction which plaintiff has put in issue. *See Wood,* 52 N.Y.2d at 147, 436 N.Y.S.2d 850, 418 N.E.2d 365; *cf. Continental Diamond Mines, Inc. v. Kopp,* 28 A.D.2d 518, 518, 279 N.Y.S.2d 752 (1967) ("The defendants' objections, properly interposed to such testimony [from an interested witness], were not waived by their subsequent cross-examination ... with regard to the testimony improperly admitted."). The estate here unsuccessfully argued to the district court that Rosenfeld's testimony was inadmissible. Following the court's ruling, the estate was entitled to probe Rosenfeld's credibility and to shed whatever light it could on the alleged transactions with the deceased.

Nor is it relevant that such cross-examination occurred before the reading of the disputed testimony. The district court had already made its ruling and Rosenfeld was on the stand before her former testimony was read. Given plaintiff's proffer and the ruling *in limine*, the estate was on notice that the testimony would be admitted into evidence. Thus, the estate was warranted in cross-examining Rosenfeld, and introducing evidence of her transactions with Basquiat, without opening any evidentiary door.

Moreover, to find a waiver would be inconsistent with the policies expressed in the Dead Man's Statute. The statute embodies a "careful balance of rights." *Cole,* 187 N.Y. at 493, 80 N.E. 355. Testimony from an interested witness is inadmissible where death has prevented the estate from giving its version of the events. It is when the estate advances evidence of the events that it has opened the door, and in such case a claimant against the estate may elicit such other testimony as needed to complete the picture. In *Cole,* the estate waived the protection of the statute by reading the testimony of an interested witness into evidence. To prevent unfair advantage, the interested witness was permitted to testify fully regarding her transaction with the decedent. *Id.* Because the testimony was read to the jury over the estate's objection in the present litigation, it would disserve the objectives of the statute to hold that the estate waived its protection by cross-examining Rosenfeld.

## C. *Harmless Error*

Plaintiff declares finally that any error in admitting Rosenfeld's former testimony regarding the meetings with the deceased artist Jean–Michel Basquiat constituted, at most, harmless error. Plaintiff reasons that such error was harmless because even without considering her former testimony there was more than adequate proof to sustain the jury's verdict.

■ An error in applying CPLR 4519 may, of course, be harmless. *See, e.g., Musico v. Champion Credit Corp.,* 764 F.2d 102, 112 (2d Cir.1985). An erroneous evidentiary ruling warrants reversal only if it affects "the substantial rights of the parties." 28 U.S.C. § 2111 (1994); Fed.R.Civ.P. 61; *see* Fed. R.Evid. 103(a); *Malek v. Federal Ins. Co.,* 994 F.2d 49, 55 (2d Cir.1993); *United States ex rel. D'Agostino Excavators, Inc. v. Heyward–Robinson Co.,* 430 F.2d 1077, 1083 (2d Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *De Santa v. Nehi Corp.,* 171 F.2d 696, 698 (2d Cir. 1948). In making a determination whether or not an error was harmless, we assess the likelihood that the error changed the case's outcome. *Malek,* 994 F.2d at 55.

■ Although we express no opinion regarding the merits of excluding the testimony of interested witnesses, it is quite clear to us that the trial court's ruling swayed the outcome in the case at hand and therefore affected the estate's substantial rights. The central issue was the veracity of Rosenfeld's version of the events that transpired at Basquiat's loft in 1982. Hence, the admission or exclusion of Rosenfeld's own testimony as to what transpired on that occasion was most likely to affect the outcome. Although plaintiff introduced other evidence of a contractual obligation, that is, the written document allegedly prepared by Basquiat, the testimony of the handwriting expert, and the testimony of Rosenfeld's driver, Rosenfeld's description of the two meetings was a critical part of her case. Since we believe the jury's verdict was substantially influenced by the court's evidentiary ruling that allowed the jury to hear her testimony, that ruling cannot be said to be harmless error.

In sum, none of the grounds plaintiff advances for the admissibility at the second trial of the testimony she gave at the first trial is persuasive. We hold instead the testimony was barred by New York's Dead Man's Statute.

## II The Statute of Frauds

We pass now to the estate's point respecting the Statute of Frauds. The estate avers it is entitled to judgment as a matter of law because the Statute of Frauds makes the alleged agreement between plaintiff and the artist unenforceable. It states that a written contract for the sale of goods must include the date of delivery if the parties have indeed

agreed on a specific date, although a reasonable delivery time will be inferred in the absence of an express provision. Because the jury found that there was an oral agreement regarding a particular delivery date, the argument continues, the document bearing the signatures of Rosenfeld and Basquiat is legally insufficient. In addition, defendant maintains the oral agreement regarding the delivery date was invalid because it could not be performed within a year. None of these contentions has merit.

 Because this case involves an alleged contract for the sale of three paintings, any question regarding the Statute of Frauds is governed by the U.C.C. *See* N.Y. U.C.C. § 2–102 (applicability to "transactions in goods") (McKinney 1988); § 2–201 (contract for $500 or more is unenforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party [charged]"). Under the U.C.C., the only term that *must* appear in the writing is the quantity. *See* N.Y. U.C.C. § 2–201 cmt. 1. Beyond that, "[a]ll that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." *Id.* The writing supplied by the plaintiff indicated the price, the date, the specific paintings involved, and that Rosenfeld paid a deposit. It also bore the signatures of the buyer and seller. Therefore, the writing satisfied the requirements of § 2–201.

Citing *Berman Stores Co. v. Hirsh,* 240 N.Y. 209, 148 N.E. 212 (1925), the estate claims that a specific delivery date, if agreed upon, must be in the writing. *Berman Stores* was decided before the enactment of the U.C.C. and was based on the principle that "the note or memorandum ... should completely evidence the contract which the parties made." 240 N.Y. at 214, 148 N.E. 212 (quoting *Poel v. Brunswick–Balke–Collender Co.,* 216 N.Y. 310, 314, 110 N.E. 619 (1915)). The rule that a specific delivery date is "an essential part of the contract and must be embodied in the memorandum," *Berman Stores,* 240 N.Y. at 215, 148 N.E. 212, was rejected by the legislature—at least for sale-of-goods cases—when it enacted the U.C.C. That rule and the statute upon which it was based were repealed to make way for

the U.C.C. *See Silverman v. Alcoa Plaza Assocs.,* 37 A.D.2d 166, 169, 323 N.Y.S.2d 39 (1971) (Article 5 of Personal Property Law superseded by Article 2 of U.C.C.). The U.C.C. "[c]ompletely re-phrased" the provisions of prior legislation and "intended to make it clear that ... [t]he required writing need not contain all the material terms." N.Y. U.C.C. § 2–201 cmt. 1.

 The estate also urges that the alleged agreement is unenforceable because it could not be performed within a year. It relies on § 5–701(a)(1) of the New York General Obligations Law, which requires a signed writing for an agreement "not to be performed within one year from the making thereof." But a contract for the sale of goods is not subject to the one-year rule because a "writing covering the sale of goods which is sufficient ... under U.C.C. 2–201 is valid despite its insufficiency under General Obligation Law § 5–701." *AP Propane, Inc. v. Sperbeck,* 157 A.D.2d 27, 29–30, 555 N.Y.S.2d 211 (1990), *aff'd,* 77 N.Y.2d 886, 568 N.Y.S.2d 908, 571 N.E.2d 78 (1991); *cf. Henry L. Fox Co. v. William Kaufman Org., Ltd.,* 74 N.Y.2d 136, 140–41, 544 N.Y.S.2d 565, 542 N.E.2d 1082 (1989) (New York has enacted several Statutes of Frauds that require more or less particularity in writings depending on the legislature's view of the risk of a false claim in a given factual setting). Hence, the provisions of § 5–701 do not control here.

To support the relevance of statutes other than the U.C.C., the estate relies extensively on cases applying pre-U.C.C. law. *See Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.,* 614 F.2d 832, 836 & n. 2 (2d Cir.1980) (applying "*then-applicable* New York Statute of Frauds" to 1961 transaction, because "the [U.C.C.] had not yet been adopted") (emphasis added); *Tradeways Inc. v. Chrysler Corp.,* 342 F.2d 350, 356 (2d Cir.) (barring proof of oral contract allegedly formed in 1955, where contract could not be performed within one year), *cert. denied,* 382 U.S. 832, 86 S.Ct. 71, 15 L.Ed.2d 75 (1965); *Franklin Research and Dev. Corp. v. Swift Elec. Supply Co.,* 340 F.2d 439, 443 n. 4 (2d Cir.1964) (applying Personal Property Law to transaction occurring in 1959); *Berman Stores,* 240 N.Y. at 215, 148 N.E. 212 (specific delivery date is "an essential part of the contract and

must be embodied in the memorandum"); *M & S Mercury Air Conditioning Corp. v. Dunkirk Bldg. Corp.*, 18 A.D.2d 1014, 1015, 239 N.Y.S.2d 190 (1963) (requiring date of completion of performance, if agreed, to be in writing). All are inapposite.

Because the writing, allegedly scrawled in crayon by Jean–Michel Basquiat on a large piece of paper, easily satisfied the requirements of § 2–201 of the U.C.C., the estate is not entitled to judgment as a matter of law. It is of no real significance that the jury found Rosenfeld and Basquiat settled on a particular time for delivery and did not commit it to writing; nor is it of any moment that performance may not have been possible within one year of when the agreement was made. As a consequence, though this case must be retried, the alleged contract is not invalid on Statute of Frauds grounds.

### CONCLUSION

The arguments advanced by the estate relating to discretionary evidentiary rulings by the trial judge need not be addressed. Nor do we find any merit in its contention that the evidence of the paintings' market value was insufficient. For the reasons stated, the judgment is reversed and the case remanded for a new trial not inconsistent with this opinion.